[No. 51193–4.   En Banc.   August 1, 1985.]

VALENTINE ZAMORA, ET AL, *Plaintiffs,* v. MOBIL OIL
CORPORATION, ET AL, *Respondents,* CAL GAS
CORPORATION, *Appellant.*

*Lee, Smart, Cook, Martin & Patterson, Inc., P.S.,* by *John Patrick Cook* and *Jeffrey P. Downer,* for appellant.

*Stephen C. Kelly,* for respondent Mobil Oil Corp.

*L. William Houger* and *Christopher J. Mertens,* for respondent Northwest Propane Sales.

ANDERSEN, J.—

FACTS OF CASE

This is the second of two appeals which deal with the legal aftermath of a fire and an alleged propane gas explosion which took the lives of five members of the Zamora family and injured others. The first appeal, *Zamora v. Mobil Oil Corp.,* 104 Wn.2d 199, 704 P.2d 584 (1985) (*Zamora* I), arose from the liability trial and involved disputed liability issues. This appeal arises from the subsequent contribution case and involves contribution between tortfeasor issues. We reverse in part and affirm in part.

The facts again, briefly, are that the Zamora family filed suit alleging that the fire which burned their rented home was caused by a propane gas leak which went undetected because the gas was not sufficiently odorized to put them on notice of the leak. They sued, among others, all of the companies which had handled the propane. The chain of distribution of the propane was as follows:

Manufacturer (Mobil Oil Corporation);
Distributor (Cal Gas Corporation);
Retailer (Northwest Propane Sales Inc.); and then to the Consumers (the Zamora family).

Each of the defendants in the chain of distribution cross–

claimed back up the chain. The retailer (Northwest) cross–claimed against the distributor (Cal Gas) and the distributor, in turn, cross–claimed against the manufacturer (Mobil). Each cross claimant asked that the company ahead of it in the chain of distribution be required to repay the cross claimant all sums it might be required to pay out by way of damages, attorneys' fees and costs. The odorant manufacturer (Pennwalt Corporation) and the Zamoras' landlord (Emma McMillen) were also defendants in the action but are not parties to this appeal.

At the outset of the trial proceedings, the trial court "bifurcated" the case—that is, it severed or separated the contribution case, consisting of the various cross claims, from the liability case and then proceeded ahead with the liability case. Then at the outset of the trial of the liability case, the trial court granted summary judgment on the issue of liability to the distributor (Cal Gas) and dismissed it from the liability case. We reversed that summary judgment of dismissal in *Zamora* I.

Several days into the liability trial, the remaining parties settled. The following amounts were paid to the plaintiffs Zamora by the chain of distribution defendants remaining in the case:

| | |
|---|---|
| Manufacturer (Mobil Oil) | $150,000; and |
| Retailer (Northwest) | 100,000. |

The following additional sums were also paid to the plaintiffs by way of settlement:

| | |
|---|---|
| Odorant manufacturer (Pennwalt) which also settled at trial | $100,000; and |
| Landlord (McMillen) who settled earlier | 45,000. |
| The total amount thus paid to plaintiffs in settlement was | $395,000. |

After settlement was reached during trial, the trial court

conducted a reasonableness hearing.[1] Based on the evidence submitted to it, and on the factors set forth in *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717–18, 658 P.2d 1230 (1983), the trial court approved the settlement as reasonable. Thereupon, the trial court dismissed the Zamoras' action against the remaining defendants in the liability case along with the contribution cross claims between those defendants. The distributor (Cal Gas) did not participate in the reasonableness hearing and did not contribute to the settlement.

The contribution case was not tried but issues therein were later decided by the trial court on motions for summary judgment brought by the respective parties in that case—that is, by the manufacturer, distributor and retailer.

The ultimate issues on this appeal are the validity of the trial court's three orders on summary judgment entered in the contribution case. Each order will be separately discussed herein and for convenience will be referred to in the footnotes by the name of the party proposing the order. So as to allow an immediate appeal, the trial court in each order made an express direction for entry of judgment and a written finding that there was no just reason for delay.[2] The appeal comes to this court from the Court of Appeals by an administrative transfer.

Prefatory Note as to the Effective Date of the
Tort Reform and Products Liability Act
(Tort Reform Act)

The tragic gas explosion and fire out of which these cases arose occurred on January 26, 1980. That was prior to adoption of the Tort Reform Act by the 1981 Legislature.[3] The sections of that act which changed existing judicially

---

[1]RCW 4.22.060(1).

[2]RAP 2.2(d); *Doerflinger v. New York Life Ins. Co.*, 88 Wn.2d 878, 567 P.2d 230 (1977).

[3]Laws of 1981, ch. 27.

created products liability law were made applicable only to those claims which *arose* on or after July 26, 1981, the effective date of the act.[4] Since the explosion and fire herein occurred before that effective date, the limited protections which the products liability part of the act affords to nonmanufacturing product sellers such as the distributor (Cal Gas)[5] are not available here.[6] The sections of the Tort Reform Act which established contribution among multiple tortfeasors (*i.e.*, among those who are jointly and severally liable for the same harm), however, were specifically made retroactive to all actions not *tried* before July 26, 1981.[7] Since this case was heard after July 26, 1981, the contribution provisions of the act, RCW 4.22.030–.060, are applicable to this case. For convenience of reference, these contribution statutes are included as an Appendix to this opinion.

## ISSUES

ISSUE ONE. Did the trial court err in granting the retailer (Northwest) a summary judgment against the distributor (Cal Gas) on the retailer's indemnity claim?

ISSUE TWO. Did the trial court err in granting the distributor (Cal Gas) a summary judgment on its claim for contribution or indemnity against the manufacturer (Mobil)?

ISSUE THREE. Does the distributor have any remaining contract claims against the manufacturer?

---

[4]Laws of 1981, ch. 27, § 15(1); RCW 4.22.920(1).

[5]*See* Washington State Senate Select Committee on Tort and Product Liability Reform, *Final Report* (hereinafter Senate Report), Senate Journal, 47th Legislature (1981), at 625; Talmadge, *Washington's Product Liability Act,* 5 U. Puget Sound L. Rev. 1, 10–11 (1981); RCW 4.22.040.

[6]*Zamora v. Mobil Oil Corp.,* 104 Wn.2d 199, 205, 704 P.2d 584 (1985) (*Zamora* I).

[7]Laws of 1981, ch. 27, § 15(2); RCW 4.22.920(2).

## DECISION

ISSUE ONE.

CONCLUSION. The trial court correctly ruled that there was no issue of fact as to the distributor's liability to the retailer based on contractual indemnity, and the judgment entered pursuant to CR 56 in favor of the retailer (Northwest) against the distributor (Cal Gas) was proper.

The trial court granted the motion of the retailer (Northwest) for summary judgment against the distributor (Cal Gas) for $50,000 in contribution plus attorneys' fees and costs of $54,630. These amounts were determined by taking the amount of the settlement which the retailer paid the plaintiffs ($100,000), deducting therefrom the reasonable value of the plaintiffs' case against it prior to the odorant issue being brought into the case ($50,000), and adding to that sum what the trial court agreed were reasonable attorneys' fees and costs ($54,630) incurred subsequent to the retailer's tender of defense to the distributor. On appeal, the distributor assigns error to the fact of this $104,630 award against it but not to the amount thereof.

Because the settlement with the plaintiffs did not provide for the discharge from liability of the distributor (Cal Gas) (which had not participated in the settlement), the distributor was not discharged from liability for contribution,[8] nor was the retailer (Northwest) barred from seeking contribution against it.[9]

Here, there was a written agreement between the distributor (as seller) and retailer (as buyer) which provided as follows with respect to the odorant which was to be added to the propane:

> LPG [liquified petroleum gas]—1.5# [pounds] of Ethyl Mercaptan per 10,000 gallons, unless advised differently: Seller will indemnify Buyer for all loss, cost or expense Buyer may sustain by reason of Seller's failure to odorize as aforesaid.

---

[8]RCW 4.22.060(2).

[9]RCW 4.22.040(2)(a).

■ The odorant in the propane in question was not Ethyl Mercaptan as required by the contract. In granting the retailer summary judgment against the distributor, the trial court specifically did so on the basis of the contractual indemnity right which the retailer was accorded by this clause.[10] Since the retailer's contractual indemnity rights against the distributor did survive the settlement,[11] the trial court did not err by so ruling.

The distributor (Cal Gas) further argues, however, that we should hold that the retailer (to use other language in the above contract clause) was "advised differently" as to the odorant used because the load tickets it received contained this language:

"Name of odorant—Pennodorant 1013".

Thus, as the issue is presented here, the odorant which the retailer and distributor specified in their contract was to be in the propane was the chemical "Ethyl Mercaptan" whereas the odorant delivered to the retailer bore the odorant manufacturer Pennwalt Corporation's odorant trade name, "Pennodorant 1013"; and the odorant with the trade name "Pennodorant 1013" was *not* "Ethyl Mercaptan" but was odorant "tetrahydrothiophene"—also known as "thiophane".

■ The affidavit of the retailer's comanager filed in support of the retailer's motion for summary judgment states with reference to "Pennodorant 1013" that it "is just a trade name of a type of odorant that is used by the manufacturer. As a trade name it is meaningless to us in regards to the actual chemical used to odorize the propane." The retailer (Northwest), as the party moving for summary judgment, thus made an adequate showing that the trade name on the load slip was meaningless to it as compared to the chemical name of the product specified in its contract. This is sufficient to sustain this aspect of the

---

[10]Northwest's summary judgment order, at 3.

[11]*See Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 724, 658 P.2d 1230 (1983).

summary judgment proceeding since no probative evidence rebutting that fact was presented.[12]

ISSUE TWO.

CONCLUSION. The trial court erred in entering judgment for the distributor (Cal Gas) against the manufacturer (Mobil) for the sums that the distributor was required to pay to the retailer (Northwest) by way of indemnity, attorneys' fees and costs. The trial court also erred in attempting by its judgment to bind the manufacturer (Mobil) to repay the distributor (Cal Gas) for any damages the distributor (Cal Gas) might in the future be required to pay to the plaintiffs Zamora and to also pay the distributor such future attorneys' fees and costs as it might incur in connection therewith. The manufacturer (Mobil), having settled with plaintiffs Zamora for what the trial court determined to be a reasonable amount, and not having separately contracted to indemnify the distributor, is by law discharged from all liability for contribution.

The trial court granted summary judgment in amount $156,263 to the distributor (Cal Gas) against the manufacturer (Mobil).[13] This sum was arrived at by adding the distributor's $51,633 in attorneys' fees and costs to the retailer's $104,630 judgment against the distributor. The trial court ruled as it did based on what it termed "the alleged breach of contract between Mobil and Cal Gas or based upon a right which Cal Gas may enjoy at common law for indemnity/contribution; . . ."[14]

As Dean Prosser instructs, "[t]here is an important distinction between contribution, which distributes the loss among the tortfeasors by requiring each to pay his propor-

---

[12]CR 56; *American Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 767, 551 P.2d 1038 (1976). See responding affidavit of J. P. Downer. *See also Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 49, 593 P.2d 1308, 6 A.L.R.4th 923 (1979).

[13]Cal Gas' summary judgment order, at 3.

[14]Mobil's summary judgment order, at 5.

tionate share, and indemnity, which shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead."[15] By enacting the contribution sections of the Tort Reform Act, the Legislature made a policy determination that henceforth in this state there would be a right of contribution between multiple tortfeasors (*i.e.,* among those who are jointly and severally liable for the same harm) and in so determining it intentionally overruled prior Washington law to the contrary.[16] The Tort Reform Act also specifically provided (subject to narrow limitations not here pertinent) that "[t]he common law right of indemnity between active and passive tort feasors is abolished: . . ."[17]

Mobil had manufactured and odorized the propane in question. At the summary judgment hearings, the trial judge was very candid from the outset in stating how he looked at the contribution case, and declared that "I am looking for everything to end up at Mobil." The several summary judgment orders entered in this case so reflect. However appropriate that view might have been under prior court–made "indemnity between active and passive tortfeasors" law, it is not now the law under the contribution statutes enacted by the Legislature and is not the law applicable to this case. The manufacturer (Mobil), having settled for what the trial court determined to be a reasonable amount, was thereby discharged from all liability for contribution.[18]

In *Glover,* as here, we were invited to change the stated effect of the contribution statutes but declined to do so saying:

---

[15]W. Prosser, *Torts* § 51, at 310 (4th ed. 1971).

[16]Senate Report, at 628; *Johnson v. Continental West, Inc.,* 99 Wn.2d 555, 558, 663 P.2d 482 (1983).

[17]RCW 4.22.040(3). *See Glover,* at 715; *Johnson,* at 558.

[18]RCW 4.22.060(2); *Glover,* at 723.

Thus, we conclude that in the absence of contractual arrangements between the defendants to the contrary, contribution and indemnity rights do not survive a settlement.[19]

To the extent this statement in *Glover* was obiter dictum, we now expressly so hold here and do so for the reasons set forth in *Glover*. The public policy reason behind this rule is that of encouraging settlement of lawsuits; and the Legislature obviously concluded that it felt the ability of a party entering into a settlement with a claimant to be discharged from all claims, including contribution claims, was essential to fulfill this policy of encouraging settlement.[20] Although the summary judgment order quoted above refers to "contract" rights, there was no contractual indemnity agreement by the manufacturer (Mobil) to hold the distributor (Cal Gas) harmless as there was between the distributor and the retailer (Northwest) as discussed above. The trial court recognized this in one of the summary judgment orders wherein it stated:

There does not exist a provision in the contract between defendant Mobil and Cal Gas under the terms of which Mobil is obligated to indemnify defendant Cal Gas; . . . [21]

The distributor also argues that "[s]ince Cal Gas had neither formal notice of, nor opportunity to participate in, the reasonableness hearing, that hearing should not impair Cal Gas' right of contribution."[22] The distributor correctly points out that the procedures set forth in the contribution statutes for reasonableness hearings require that parties entering into settlement agreements "shall give five days' written notice of such intent to all other *parties* and the

---

[19]*Glover*, at 724.

[20]*See* Senate Report, at 636; Talmadge, *Washington's Product Liability Act*, 5 U. Puget Sound L. Rev. 1, 19 (1981); *Glover*, at 724.

[21]Mobil's summary judgment order, at 3.

[22]Opening Brief of Appellant Cal Gas Corporation, at 16.

court." (Italics ours.) RCW 4.22.060(1) (part). The manufacturer responds by saying that since the distributor had previously been dismissed by summary judgment, it was no longer a "party" to the lawsuit, and hence was not entitled to notice. The answer, however, is not that simple.

Here, as is quite customary in cases involving indemnity or contribution cross claims among multiple defendants, the parties stipulated to some kind of a "bifurcation" of the liability aspects of the case from the indemnity and contribution aspects of it. In the typical situation, the parties defendant will stipulate that the cross claims be tried to the court without a jury following the trial to a jury of the liability aspects of the case. If this "bifurcation" amounted to an actual *severance* under CR 21, the indemnity/contribution phase of the case would be an entirely separate lawsuit and the distributor having been dismissed from the liability case would no longer be a "party" to that action,[23] and hence, by the terms of the statute[24] would not be entitled to notice of the reasonableness hearing. If, on the other hand, this "bifurcation" was simply the granting of a *separate trial* of the cross claim issues of the case pursuant to CR 42(b), in the furtherance of convenience and to avoid prejudice, then the distributor would still be a "party" to the action and under the foregoing statute would be entitled to notice of the reasonableness hearing.[25] As Professors Wright and Miller point out in their authoritative work discussing the analogous federal rules:

> The procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21. Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently. Unfortunately this distinction, clear enough in theory, is often obscured

---

[23] CR 21; 9 C. Wright & A. Miller, *Federal Practice* § 2387 (1971).

[24] RCW 4.22.060(1).

[25] 9 C. Wright & A. Miller, *Federal Practice* § 2387 (1971).

in practice since at times the courts talk of "separate trial" and "severance" interchangeably.

(Footnotes omitted.) 9 C. Wright & A. Miller, *Federal Practice* § 2387, at 277 (1971).

Since the record of the bifurcation stipulation and decision has not been made a part of the appellate record in either this case or *Zamora* I, we do not know whether a true severance under CR 21 was ordered here or whether a separate trial was ordered under CR 42(b). Based on the parties' briefs and argument, however, it would appear that the contribution aspect of the case was probably a separate trial under CR 42(b) and not an independent action; therefore, for purposes of this opinion, we will assume that the distributor was still a "party" and thus entitled to notice of the reasonableness hearing.

■ The requirement for 5 days' notice to all parties of the reasonableness hearing is obviously for the purpose of giving all parties the opportunity to appear and be heard at that hearing and to do their best to insure that the settlement is in fact a reasonable one—a matter of obvious importance to all nonsettling parties because the claim of a settling plaintiff against a nonsettling party is ordinarily reduced by the amount of the settlement.[26] The 5-day written notice to parties requirement of the statute, RCW 4.22.060(1), is much the same as the requirement for a 5-day notice of presentation for findings of fact (CR 52(c)) and the 5-day notice of presentation for judgments (CR 54(f)(2)). Under these latter two rules, 5 days' notice is required unless a party in some manner waives such notice or the trial court for cause shown shortens the time—providing that, in either event, no prejudice ensues.[27] By analogy, we hold that these same principles should be applicable to the situation before us.

Here, following the distributor's dismissal from the lia-

---

[26]RCW 4.22.060(2); *Glover,* at 715–16.

[27]*Seidler v. Hansen,* 14 Wn. App. 915, 919–20, 547 P.2d 917 (1976); 4 L. Orland, Wash. Prac., *Rules Practice* § 5636 (3d ed. 1983).

bility case, counsel for the distributor was informed that settlement discussions were going on and was asked to contribute to a settlement package. During arguments to the trial court in the contribution case, distributor's counsel advised the court that "the day that the settlement hearing was held [counsel for the manufacturer] did call me on the phone to tell me there was going to be a hearing that afternoon but at that time we weren't even in the case." It thus appears from the record that the distributor had in fact been apprised through counsel of the reasonableness hearing and simply chose not to attend, and nothing in the record suggests he was unable to attend. This constituted a waiver by the distributor of its statutory right to written notice of the reasonableness hearing. More basic than this, however, is that settlement of the liability case was reached well into a hotly contested jury trial and the reasonableness hearing was conducted before the same trial judge—a judge who was intimately acquainted with all aspects of the case and who held that the settlement was a reasonable one. In a later order, the trial court also found as a fact "that there was no fraud or collusion in the settlements; . . ."[28] Accordingly, there is nothing whatsoever in the situation presented in this case which suggests that the settlement was a "sweetheart deal"[29] to the prejudice of the nonsettling distributor. No prejudicial error was committed in this regard.

ISSUE THREE.

CONCLUSION. The trial court did not err by declining to dismiss any nonindemnity or noncontribution breach of contract causes of action that the distributor (Cal Gas) might have against the manufacturer (Mobil). Whether any such causes of action exist has not been determined herein.

The distributor (Cal Gas) did not plead a contract cause of action, in indemnity or otherwise, in the cross claim it

---

[28]Mobil's summary judgment order, at 2.

[29]See Glover, at 717; Senate Report, at 636–37.

filed against the manufacturer (Mobil). There was a contract between them, however, and it was made a part of the record in the contribution case summary judgment proceeding. There were also references to that contract in argument as well as in some of the summary judgment orders. For example, at one point in his argument before the trial court in the contribution case, counsel for the manufacturer stated that "[a]rguably, Cal Gas would have a claim for breach of contract against my client or arguably to the extent that contract was in full force and effect at the time this cause of action arose, and as we pointed out we don't think it's really germane." In colloquy, the trial court also made passing reference to the possibility that the distributor might have some claim against the manufacturer under the Uniform Commercial Code.

One of the summary judgment orders in this case states in part that "[t]he motion of Mobil to dismiss the cross-claim of Cal Gas is denied to the extent the claim of Cal Gas is based upon the alleged breach of contract between Mobil and Cal Gas . . ."[30] Based on the foregoing, we conclude that a fair construction of this portion of the trial court's order is that the trial court allowed amendment of the pleadings of the distributor (Cal Gas) to state a separate nonindemnity, noncontribution contract claim against the manufacturer (Mobil) and that the trial court also declined to order that contract claim dismissed by summary judgment.[31] This then preserves that claim for litigation between the distributor and manufacturer following remand of this case.

By our decision in this summary judgment proceeding, we reach no issue relating to the merits of any nonindemnity or noncontribution contract causes of action which may exist between the distributor (Cal Gas) and the manu-

---

[30]Mobil's summary judgment order, at 4, 5.

[31]*See* CR 15; *Caruso v. Local 690, Int'l Bhd. of Teamsters,* 100 Wn.2d 343, 349–51, 670 P.2d 240 (1983).

facturer (Mobil). We also reach no issue which may in the future arise between plaintiffs Zamora and the distributor (Cal Gas). Those cases have yet to be tried.

The parties' remaining assignments of error are disposed of by our foregoing rulings.

Affirmed in part; reversed in part; and remanded for further proceedings not inconsistent with this opinion.

## APPENDIX

### RCW 4.22.030

Nature of liability. If more than one person is liable to a claimant on an indivisible claim for the same injury, death or harm, the liability of such persons shall be joint and several.

### RCW 4.22.040

Right of contribution—Indemnity. (1) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution among liable persons is the comparative fault of each such person. However, the court may determine that two or more persons are to be treated as a single person for purposes of contribution.

(2) Contribution is available to a person who enters into a settlement with a claimant only (a) if the liability of the person against whom contribution is sought has been extinguished by the settlement and (b) to the extent that the amount paid in settlement was reasonable at the time of the settlement.

(3) The common law right of indemnity between active and passive tort feasors is abolished: Provided, That the common law right of indemnity between active and passive tort feasors is not abolished in those cases to which a right of contribution by virtue of RCW 4.22.920(2) does not apply.

### RCW 4.22.050

Enforcement of contribution. (1) If the comparative fault of the parties to a claim for contribution has been established previously by the court in the original action, a party paying more than that party's equitable share of the obligation, upon motion, may recover judgment for contribution.

(2) If the comparative fault of the parties to the claim for contribution has not been established by the court in the original action, contribution may be enforced in a separate action, whether or not a judgment has

been rendered against either the person seeking contribution or the person from whom contribution is being sought.

(3) If a judgment has been rendered, the action for contribution must be commenced within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (a) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against him and commenced the action for contribution within one year after payment, or (b) agreed while the action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and commenced an action for contribution.

RCW 4.22.060

Effect of settlement agreement. (1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.

(2) A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

(3) A determination that the amount paid for a release, covenant not to sue, covenant not to enforce judgment, or similar agreement was unreasonable shall not affect the validity of the agreement between the released and releasing persons nor shall any adjustment be made in the amount paid between the parties to the agreement.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.

Reconsideration denied October 3, 1985.