[No. 51192–6.   En Banc.   August 1, 1985.]

VALENTINE ZAMORA, ET AL, *Appellants,* v. MOBIL OIL CORPORATION, ET AL, *Defendants,* CAL GAS CORPORATION, *Respondent.*

200

*Ron J. Perey* (of *Perey & Smith*) and *Phillip Rosellini* (of *Smith & Rosellini*), for appellants.

*Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* by *John Patrick Cook* and *Jeffrey P. Downer,* for respondent.

PEARSON, J.—The primary issue presented by this appeal is whether a seller of propane, who never had physical possession or control of the gas, should be held liable under either common law negligence or strict product liability theories for injuries resulting from a propane explosion and fire. We hold that as a matter of law respondent was not negligent, but that the principles of common law strict liability do place respondent in the chain of distribution of the propane. Because a material factual question exists as to proximate cause, summary judgment should not have been granted to respondent on the product liability claim. Accordingly, we remand for a trial on that issue only. All other issues raised by appellants are disposed of by this opinion.

In 1980, appellants lived in a rented house in Lynden, Washington, with 6 of their 10 children. On January 26, 1980, a fire broke out in that house, killing 5 of the children, and injuring the parents and the sixth child.

Appellants subsequently brought a wrongful death suit against their landlord, Mobil Oil Corporation, Pennwalt Corporation, Northwest Propane Sales, Inc., and respondent Cal Gas Corporation. The complaint alleged that the fire was caused by a propane gas leak into the house which went undetected because the gas was inadequately odorized to put appellants on notice of the leak. Appellants asserted causes of action for common law negligence, strict liability for sale of a defective product, a Consumer Protection Act violation, and a statutory strict liability claim under RCW 80.04.010 and 80.04.440.

On January 9, 1984, the first day of trial, appellants settled their claim against the landlord, the jury was selected and preliminary motions were heard. Appellants and respondent each moved for summary judgment prior to trial. Appellants withdrew their motion at trial and argument was heard on respondent's motion only. The trial judge granted respondent's motion for summary judgment on January 11, 1984.

The trial continued against the remaining defendants for

several days before appellants settled all claims with those parties for approximately $350,000. Appeal of the summary judgment order granted by the trial court to respondent followed. This court accepted the appeal as an administrative transfer from Division One of the Court of Appeals.

Mobil manufactured the propane involved here at its Ferndale, Washington, refinery. Propane is an odorless, colorless, highly flammable gas; a foul-smelling odorant is added to increase the safety of the product. Pennwalt manufactured this odorant (thiophane) and sold it to Mobil for use at Mobil's Ferndale refinery. Respondent Cal Gas, a Delaware corporation headquartered in California, bought the propane from Mobil and sold it to Northwest Propane, a retailer who delivered the propane directly to appellants. Significantly, respondent never had possession or control of the propane here. It bought and sold the gas completely as a paper transaction. Northwest Propane took delivery of the gas it purchased from respondent directly from Mobil's Ferndale refinery.

The fact that respondent never physically handled, modified, altered, transported, or refined the propane ultimately sold to appellants is uncontroverted. At issue here is the legal effect of respondent's role in the marketing of the gas.

# I
## NEGLIGENCE

Appellants allege that respondent was negligent in failing to inspect the propane for odorization and in failing to warn appellants of the dangers of the propane. We find that because respondent never had possession or control of the gas and had no reason to believe that the gas was not properly odorized, it had no duty to inspect or warn appellants.

■ The general rule is that where a product is sold in the original package or container, in the condition in which it was received from a reputable manufacturer, and the seller had no opportunity to inspect or test before resale, no

liability attaches to that seller for such failure to test or inspect. Annot., *Seller's Duty To Test or Inspect as Affecting His Liability for Product–Caused Injury,* 6 A.L.R.3d 12, 25 (1966); *Davis v. Siloo Inc.,* 47 N.C. App. 237, 267 S.E.2d 354 (1980); *Sam Shainberg Co. v. Barlow,* 258 So. 2d 242 (Miss. 1972). The rationale of that rule fully applies to respondent, who never handled the product and therefore had no opportunity to test or inspect it.

Further, a seller of an item which was manufactured by a third party is not generally liable for harm caused by the dangerous character of the item *if* the seller did not know or had no reason to know that the item was, or was likely to be, dangerous. Restatement of Torts § 402 (Supp. 1948); *Ringstad v. I. Magnin & Co.,* 39 Wn.2d 923, 239 P.2d 848 (1952); *Continental Cas. Co. v. Belknap Hardware & Mfg. Co.,* 281 S.W.2d 914 (Ky. Ct. App. 1955). A seller is not obligated to test a product unless he has notice that it may be dangerous or defective. *Ringstad,* at 926.

In the present case Mobil, from whom respondent purchased the propane, had contracted with respondent to odorize the propane in accordance with governmental regulations or industry practice. Because respondent could reasonably rely on Mobil, a reputable manufacturer, to odorize the propane and because respondent had no opportunity to inspect the gas itself, respondent cannot be held to have known or to have had reason to know that the propane was unreasonably dangerous by virtue of inadequate odorization.

Appellants, however, urge that because propane is an inherently dangerous product, respondent should be held to have a duty to *obtain* control or possession in order to inspect it. We disagree.

Unquestionably, propane gas is an inherently dangerous product. *Andrews v. Del Guzzi,* 56 Wn.2d 381, 353 P.2d 422 (1960). Nonetheless, the manufacturer (Mobil) and the retailer (Northwest Propane) each had possession and control of the gas and were in a position to inspect it. Generally, the seller of gas is under no duty to test for odorant

where it has no facility for odorizing and where it is shown that the manufacturer had the equipment to odorize. Likewise, the seller of the gas has no duty to test or inspect where the manufacturer has certified that malodorant has been added. *Davis v. Aetna Ins. Co.*, 291 So. 2d 486 (La. Ct. App. 1974).

The rule stated in *Martin v. Schoonover*, 13 Wn. App. 48, 54–55, 533 P.2d 438 (1975), applicable not only to retailers, but also to other product sellers, is appropriate here:

> The more the retailer [seller] is only a conduit for the product, the less likely he can be held in negligence. Conversely, the more the [seller] takes an active part in preparing the product for final use and takes the role of a manufacturer or assembler, the more likely he can be found liable in negligence. If a [seller] adopts a product as his own, he is subject to the same liability for negligence as is the manufacturer. The [seller] can be found negligent in cases where he has failed to make an inspection . . . prior to sale when it was reasonable for him to do so in light of the nature of the product, the reputability of the supplier and the scope of the risk.

(Citations omitted.)

Here, respondent never touched the product, took no active part in its manufacture, did not adopt the product as its own, and was dealing with reputable manufacturers (Mobil and Pennwalt). In spite of the inherently dangerous nature of propane, it appears respondent had no notice that the product was unreasonably dangerous due to a defect (inadequate odorization). Thus, respondent had no duty to test or inspect in this case.

■ A duty to warn arises when the supplier "knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied". Restatement (Second) of Torts § 388(a) (1965); *Jones v. Hittle Serv., Inc.*, 219 Kan. 627, 549 P.2d 1383 (1976).

In *Hittle*, the distributors of propane gas sold the gas in bulk to the retailer, who in turn sold it to the ultimate consumer. An explosion occurred and the distributors/manu-

facturers were sued. That court held that the distributors of bulk propane to a retailer had no independent duty to warn the ultimate consumer. Rather, the distributor had only a duty to insure that the *retailer* was knowledgeable regarding the dangers and was able to warn the ultimate buyers. Thus, a seller of bulk propane can delegate to the retailer its duty to warn the ultimate consumer.

Furthermore, the bulk seller has no duty to warn the retailer of the dangers of a product if that retailer is already aware "through common knowledge or learning" of a specific hazard. *Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 55, 427 N.Y.S.2d 1009 (1980); *Parkinson v. California Co.*, 255 F.2d 265 (10th Cir. 1958) (holding that manufacturer had no duty to warn its purchasers (retailer and transporter of gas) of dangers where those purchasers had operated a gas business for years, were familiar with the trade journals, and already knew the dangers).

Accordingly, respondent could rely on Northwest Propane to warn the ultimate consumer (appellants). Additionally, because Northwest Propane is a well established propane distributor, the largest in Whatcom County and in business for many years, respondent had no duty to warn Northwest Propane of the obvious dangers of its business.

## II
### Strict Liability

The product liability act is inapplicable to this case because the fire occurred prior to the effective date of that act. *See* RCW 7.72.060 and 4.22.920. Applying only the common law principles of strict liability for a defective product, we hold that respondent is properly regarded as a member in the chain of distribution of the propane. Section 402A of Restatement (Second) of Torts is the controlling law in this case; that section states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby

caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

    (2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

■ This court adopted section 402A as the law of this state and applied it to claims against manufacturers in *Ulmer v. Ford Motor Co.,* 75 Wn.2d 522, 452 P.2d 729 (1969). In a broad interpretation of section 402A, this court later extended strict liability beyond manufacturers to all others in the chain of distribution. *Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975).

Section 402A, by its literal terms, imposes strict liability for *any* sale of a defective product. Thus, the sale itself of a defective product may trigger strict liability. *See LaRosa v. Superior Court,* 122 Cal. App. 3d 741, 176 Cal. Rptr. 224 (1981).

Additionally, the policies underlying the imposition of strict liability justify its imposition in this case. The primary policy justification recognized by this court for the extension of strict liability to all sellers in the chain of distribution is provision of the "maximum of protection" to the consumer. The sellers are then required to argue among themselves any questions as to their respective liability. *Seattle–First Nat'l Bank v. Tabert, supra.* That policy rationale is as applicable to sellers who never handle or control the product as it is to those sellers who do possess or control the product. In either case, consumer protection is the ultimate factor considered by this court. For a discussion of the various policy rationales underlying exten-

sion of strict liability to remote sellers, *see* Lascher, *Strict Liability in Tort for Defective Products: The Road to and Past Vandermark,* 38 S. Cal. L. Rev. 30 (1965) and 45 Wash. L. Rev. 431 (1970).

Accordingly, the fact that respondent never physically handled the gas is not dispositive of the question whether it should be regarded to be a member in the chain of distribution. Respondent has not provided this court with any case, nor has our research revealed any case, which holds that handling or possession of the product is a requisite of strict liability. Respondent's reliance on *Lyons v. Premo Pharmaceutical Labs, Inc.,* 170 N.J. Super. 183, 406 A.2d 185 (1979) to support such a proposition is misplaced.

In *Lyons,* the court held that a broker, who never had possession of the product, could not be held strictly liable. This holding was based on the fact that the product was subsequently sold in an *altered form* and for *unsafe uses,* those ultimate uses being beyond the broker's knowledge and control. Conversely, in the present case the gas was marketed exactly as sold by respondent and respondent had full knowledge of the uses to which the ultimate consumer would put the gas. Thus, the *Lyons* case is inapposite here.

Furthermore, respondent cannot be held to be merely a "passive conduit" in the marketing of the propane, as it claims. Respondent did agree to hold its buyer, Northwest Propane, harmless for liability resulting from improper odorization. Therefore, respondent's role in the marketing of the propane was certainly more active than that of an uninvolved conduit. Moreover, as we indicated in *Tabert,* the *degree* of a seller's participation in the marketing process is less important to our decision than the public protection consideration where, as here, a seller has had *some* identifiable role in placing a defective product on the market.

Accordingly, based upon the literal terms of section 402A and upon the public protection rationale for our broad interpretation of that section, we find that respondent is

appropriately included within the chain of distribution of the propane sold to appellants.

### III
### PROXIMATE CAUSE

Proximate cause is a required element of a product liability claim. *Little v. PPG Indus., Inc.,* 19 Wn. App. 812, 823, 579 P.2d 940 (1978), *modified,* 92 Wn.2d 118, 594 P.2d 911 (1979). Appellants' complaint alleged that respondent's failure to ensure proper odorization was the proximate cause of its injuries. In answer, respondent submitted affidavits in support of its motion for summary judgment which proved that the levels of odorant in appellants' propane tank, measured after the fire, were adequate to meet the requirements of WAC 480-90-101(5) and the industry standard established by the National Fire Protection Association.

Respondent now claims that its proof of compliance with these safety regulations *conclusively* establishes that the propane was adequately odorized and that any act by respondent in relation to that propane would not have prevented the fire (*e.g.,* even if respondent failed to ensure proper odorization, such failure by respondent could not have been the proximate cause of the fire, where proof is made that the propane was *somehow* properly odorized to meet these safety standards). However, respondent's contention is not supported by applicable law.

The respondent proved only that the gas was odorized in compliance with industry standards and an administrative safety regulation; such compliance, however, does not *conclusively establish* that the gas was adequately odorized. Rather, that evidence is merely relevant on the issue of proximate cause. *Vogel v. Alaska S.S. Co.,* 69 Wn.2d 497, 502, 419 P.2d 141 (1966); *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo. 1984). Respondent, in moving for summary judgment, had the burden of proof that no genuine issue of material fact existed on the question of proximate cause. *Jacobsen v. State,* 89 Wn.2d 104,

569 P.2d 1152 (1977). Because respondent's evidence of compliance with the safety standards does not conclusively establish absence of proximate cause, appellants are entitled to a trial on that issue as an element of their product liability claim.

## IV
### REMAINING CLAIMS

Appellants' remaining causes of action were properly disposed of by the summary judgment order. The first remaining claim is based upon an alleged violation of the Consumer Protection Act, RCW 19.86, by respondent. We hold that because Cal Gas never handled, controlled, nor advertised the propane gas, as a matter of law it has not had even the opportunity to engage in an "unfair or deceptive act" as required by that statute. *See Anhold v. Daniels,* 94 Wn.2d 40, 614 P.2d 184 (1980).

The second remaining claim is based on RCW 80.04.010 and 80.04.440. These statutes allow a claim against any "public service company" which violates any law or regulation of the Utilities and Transportation Commission by either affirmative act or by omission, thereby causing damage or injury. RCW 80.04.440. Significantly, liability under this law is *predicated* upon a finding of a violation of law or safety regulation. Such a finding would compel a conclusion of negligence per se, not strict liability as urged by appellant. *Hoops v. Burlington Northern, Inc.,* 83 Wn.2d 396, 405, 518 P.2d 707 (1974).

Appellants' complaint alleged that respondent violated the Commission's regulation regarding the odorization of gases (WAC 480-90-010(5)). Respondent again had the burden of proof, in its summary judgment motion, that no genuine issue of material fact existed on the question of such a violation. *Jacobsen v. State, supra.* Respondent satisfied that burden of proof at the summary judgment hearing by submission of an affidavit which proved the relevant safety regulation was met. (Affidavit of chemist Robert Stubbs, stating that chemical analysis of appellant's pro-

pane tank contents after the fire showed the gas remaining therein was odorized in compliance with WAC 480–90–101(5).) Appellants failed to controvert that evidence through submission of counteraffidavits or other evidence. Accordingly, there was no material issue of fact as to whether respondent violated a law or regulation; the evidence was that no such violation had occurred. As a matter of law, respondent is not liable under RCW 80.04.440 where no violation has occurred. Accordingly, summary judgment was appropriate on this claim.

Lastly, appellants have requested attorney fees and costs as a sanction for respondent's alleged violation of the Code of Professional Responsibility at trial. Appellants allege that respondent's counsel willfully misrepresented the applicable law to the trial judge. However, because appellants have not certified a verbatim report of proceedings to this court, there is no basis upon which to evaluate these allegations. The record furnished to this court is devoid of any evidence which would substantiate these allegations by appellants. Accordingly, the requested fees and costs are denied. However, such fees and costs as are normally awarded to the prevailing party pursuant to RAP 14.2 shall abide the outcome of a new trial.

This case is remanded to the trial court for proceedings consistent with the above holdings.

DOLLIVER, C.J., UTTER, BRACHTENBACH, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and MORGAN, J. Pro Tem., concur.

Reconsideration denied September 20, 1985.