[No. 28504-5-II. Division Two. April 15, 2003.]

RAY TOSTE, ET AL., *Plaintiffs*, v. DURHAM & BATES AGENCIES, INC., *Respondent*, MARINE INSURANCE MANAGERS, INC., ET AL., *Appellants*.

---

*Tom Montgomery* (of *Montgomery Scarp, P.L.L.C.*), for appellants.

*Matthew Turetsky* (of *Schwabe, Williamson & Wyatt*), for respondent.

SEINFELD, J. — This case involves cross claims by one defendant against another; both had previously settled with the plaintiff. Holding that RCW 4.22.060(2) abolished a settling defendant's liability for implied contractual indemnity claims, and further holding that the claims here were "simply an indirect attempt to obtain contribution,"[1] we reverse the summary judgment.

## FACTS

Raymond and Linda Toste insured their commercial fishing boat, the *F/V Ponderosa*, through insurance agent Durham & Bates, which in turn procured insurance through a surplus line broker, Marine Insurance Managers, Inc. (MIMI). MIMI secured insurance coverage with an offshore underwriter, Liberty Insurance Company.

The *F/V Ponderosa* burned and sank in the Columbia River but Liberty did not pay the claim. When Durham & Bates also refused to pay the Tostes' claim, the Tostes sued Durham & Bates, which in turn impleaded MIMI as a third party defendant. The complaint against MIMI included claims for violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, and equitable indemnity, among others.

Subsequently, both Durham & Bates and MIMI settled with the Tostes; Durham & Bates paid $100,000 and MIMI paid $200,000.[2] Durham & Bates then moved for partial

[1] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 323, 858 P.2d 1054 (1993).

[2] Prior to the settlement, the trial court granted summary judgment to Durham & Bates against MIMI and the Tostes. We accepted discretionary review, concluding that there may be genuine issues of material fact as to whether Durham & Bates had exercised ordinary care. The evidence indicated that notwithstanding its knowledge that MIMI had been obtaining insurance coverage with companies that failed to meet Washington State's solvency requirements, Durham & Bates

summary judgment on the CPA and equitable indemnity claims against MIMI. The trial court granted the motion and, on the CPA claim, awarded Durham & Bates the $100,000 it paid to the Tostes as settlement, $10,000 treble damages, and the attorney fees and costs Durham & Bates incurred to prosecute its CPA claim. And under the doctrine of equitable indemnity, the trial court awarded Durham & Bates the attorney fees and costs it incurred to defend against the Tostes' suit.

MIMI appeals, arguing that its settlement with the Tostes extinguished Durham & Bates's CPA and equitable indemnity claims and, in the alternative, that there are genuine issues of material fact regarding these claims. Durham & Bates responds that (1) its CPA claim is not an indemnity claim and (2) even if considered an indemnity claim, it is based on implied contractual indemnity rights and indemnity between nonjoint tortfeasors which, it contends, survive settlement.

## DISCUSSION

### I. An Indemnity Claim in Disguise

MIMI argues that Durham & Bates's CPA claim is actually an indemnity claim in disguise and that under RCW 4.22.060(2), its settlement extinguished Durham & Bates's indemnity claims. We agree.

█ RCW 4.22.040[3] expressly abolished the common law right of indemnity between joint tortfeasors, replacing it

did not demand from MIMI a written policy on the *F/V Ponderosa*, which would have revealed that the *F/V Ponderosa* was insured by one of these companies. But, the Tostes terminated their appeal when Durham & Bates settled with them.

[3] RCW 4.22.040 provides:

(1) *A right of contribution exists* between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution among liable persons is the comparative fault of each such person. However, the court may determine that two or more persons are to be treated as a single person for purposes of contribution.

with a right of contribution based upon comparative fault. *See Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 588-89, 5 P.3d 730 (2000). Contractual indemnity and indemnity between nonjoint tortfeasors survived the adoption of RCW 4.22.040. *Cent. Wash. Refrigeration, Inc. v. Barbee*, 133 Wn.2d 509, 946 P.2d 760 (1997); *Sabey*, 101 Wn. App. at 590-91. But RCW 4.22.060(2)[4] is broader; it releases a settling defendant from *all* indemnity and contribution liability, with the sole exception of contractual arrangements to indemnify.[5]

Here, Durham & Bates's claim, to the extent that it seeks reimbursement for the $100,000 it paid the Tostes as settlement, is actually an indemnity claim in disguise. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 858 P.2d 1054 (1993). As in *Fisons*, this CPA action is "simply an indirect attempt to obtain contribution from the [settling defendant]." 122 Wn.2d at 323.

---

(2) Contribution is available to a person who enters into a settlement with a claimant only (a) if the liability of the person against whom contribution is sought has been extinguished by the settlement and (b) to the extent that the amount paid in settlement was reasonable at the time of the settlement.

(3) *The common law right of indemnity between active and passive tort feasors is abolished*: PROVIDED, That the common law right of indemnity between active and passive tort feasors is not abolished in those cases to which a right of contribution by virtue of RCW 4.22.920(2) does not apply.

(Emphasis added.)

[4] RCW 4.22.060(2) provides:

A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

[5] The following language from *Cooper v. Viking Ventures*, 53 Wn. App. 739, 770 P.2d 659 (1989) supports this distinction between the two statutes:

Viking contends certain types of indemnification against a settling defendant survive despite RCW 4.22.040(3), which abolishes the "common law right of indemnity between active and passive tort feasors." We disagree. Absent a contractual agreement between the parties, contribution and indemnity rights do not survive settlement.

53 Wn. App. at 744 (citations omitted).

The plaintiff in *Fisons*, a patient who experienced an adverse reaction to a drug prescribed by her physician, sued the physician and the drug company. 122 Wn.2d at 307. The physician's insurance company settled with the patient and then sued the drug company under the CPA to recover the amount it paid in that settlement. *Fisons*, 122 Wn.2d at 323. The drug company then settled with the patient. *Fisons*, 122 Wn.2d at 309.

The *Fisons* court held that under RCW 4.22.060(2), the settlement between the drug company and the patient extinguished the insurance company's contribution rights. 122 Wn.2d at 324. The *Fisons* court reasoned that "[t]o allow the insurance company to bring a consumer protection action against Fisons for what is in reality contribution or indemnity would be to allow an 'end-run' around the tort reform act (RCW 4.22)." 122 Wn.2d at 324.

Durham & Bates's attempts to distinguish *Fisons* by noting that the third-party defendant in that case did not make a claim based on implied contractual indemnity. But neither did Durham & Bates. As in *Fisons*, Durham & Bates made a CPA claim. 122 Wn.2d at 323. And the *Fisons* court determined that the CPA claim was an indemnity claim in disguise of the sort that does not survive settlement. 122 Wn.2d at 323-24.

The trial court's summary judgment award for the so-called CPA claim provided for the settlement amount, plus attorney fees and CPA treble damages. This award had all the characteristics of an indemnity award and, under *Fisons*, we will treat it according to its characteristics, not its label.

## II. IMPLIED CONTRACTUAL INDEMNITY RIGHTS

Durham & Bates further argues that even if we view its claim as one for indemnity, it should be characterized as a claim for implied contractual indemnity, which, Durham & Bates argues, survives settlement. After comparing the

fundamental differences between express and implied contractual rights, we disagree.

Express contractual indemnity rights arise "when one party expressly contracts to reimburse the other party for any damages the other party may incur." *Cent. Wash. Refrigeration*, 133 Wn.2d at 513 n.3. By contrast, implied indemnity[6] is an equitable action based on a party paying more than its fair share; it is not based on tort or contract, although either may be secondarily involved. *Cent. Wash. Refrigeration*, 133 Wn.2d at 517 n.12.

Implied contractual indemnity rights "arise[] when one party incurs a liability the other party should discharge by virtue of the nature of the relationship between the two parties." *Cent. Wash. Refrigeration*, 133 Wn.2d at 513. Because of this fundamental difference between the two types of claims, implied indemnity claims are distinct, separate causes of action from any underlying contractual relationship between the parties and, consequently, the Uniform Commercial Code's statute of limitations does not apply to implied indemnity claims. *Cent. Wash. Refrigeration*, 133 Wn.2d at 516-18.

Nonetheless, Durham & Bates argues for a narrow reading of RCW 4.22.060(2), the statute that releases a settling defendant from all liability for contribution. Durham & Bates seeks to limit this statutory release to only those indemnity obligations that RCW 4.22.040(3) specifically abolished. As RCW 4.22.040(3) did not abolish contractual indemnity rights, Durham & Bates contends that this category of claims remains viable after settlement.

Under RCW 4.22.060(2), " 'in the absence of contractual arrangements between the defendants to the contrary, contribution and indemnity rights do not survive a settlement.' " *Zamora v. Mobil Corp.*, 104 Wn.2d 211, 220, 704 P.2d 591 (1985) (quoting *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 724, 658 P.2d 1230 (1983)). The *Zamora* court

---

[6] *Central Washington Refrigeration* initially refers to the action as "implied contractual indemnity" but thereafter refers to it as only "implied indemnity." 133 Wn.2d at 513-18.

continued: "To the extent this statement in *Glover* was obiter dictum, we now expressly so hold here and do so for the reasons set forth in *Glover.*" 104 Wn.2d at 220.

In *Zamora*, a propane gas leak caused a fire that burned a family's home. 104 Wn.2d at 212. Alleging that the propane had not been sufficiently odorized to put the occupants on notice of the leak, the family sued the companies that had handled the propane, including a retailer, a distributor, and a manufacturer. *Zamora*, 104 Wn.2d at 212. Each defendant cross-claimed for indemnity up the chain of distribution. *Zamora*, 104 Wn.2d at 212-13. The retailer and manufacturer eventually settled with the family. *Zamora*, 104 Wn.2d at 213.

The distributor remained liable to the retailer for indemnity claims because it had not settled and, further, it had expressly contracted to indemnify the retailer for losses caused by the distributor's failure to odorize the product. *Zamora*, 104 Wn.2d at 216-17. But the distributor could not, in turn, recover from the manufacturer because it had no express contract with the manufacturer for indemnity. Thus, the manufacturer's settlement with the family extinguished its liability. *Zamora*, 104 Wn.2d at 220.

Both the *Zamora* and *Glover* courts recognized the public policy underpinnings for extinguishing liability against settling defendants. Specifically, the legislature provided a motivation to settle lawsuits—the discharge of liability for other claims arising out of the incident, including contribution claims. *Zamora*, 104 Wn.2d at 220; *Glover*, 98 Wn.2d at 724. Contrary to Durham & Bates's suggestion, we find nothing in *Zamora* that supports an exception for claims founded on an implied agreement to indemnify.

Durham & Bates also cites *Central Washington Refrigeration* to support its implied contractual indemnity claim. But the *Central Washington Refrigeration* court merely inferred that implied contractual indemnity rights survived RCW 4.22.040(3)'s abolition of common law indemnity between joint tortfeasors; it did not speak to the impact of a settlement under RCW 4.22.060(2). 133 Wn.2d at 513 n.3.

Given (1) the clearly expressed legislative intent in RCW 4.22.060(2) to release settling defendants from all liability, (2) the absence of any authority to support an exception for implied contractual indemnity rights, and (3) the fundamental differences between express and implied contractual indemnity rights, we hold that RCW 4.22.060(2) extinguished the implied contractual indemnity obligations of a settling defendant. *See also Stratton v. Peat, Marwick, Mitchell & Co.*, 190 Cal. App. 3d 286, 235 Cal. Rptr. 374 (1987) (implied contractual indemnity does not survive a good faith settlement; it is distinguishable from express contractual indemnity in that it is a form of equitable indemnity).

### III. INDEMNITY RIGHTS BETWEEN NONJOINT TORTFEASORS

Durham & Bates also argues that it was not negligent, which precluded it from being a joint tortfeasor with MIMI. Citing *Sabey*, 101 Wn. App. 575, and *Radach v. Gunderson*, 39 Wn. App. 392, 695 P.2d 128 (1985), it contends that indemnity rights between nonjoint tortfeasors survive settlement. We disagree.

*Sabey* and *Radach* do not support Durham & Bates's contention. They merely clarify that RCW 4.22.040 abolished only the common law right of indemnity between joint tortfeasors, and only to the extent that it replaced those rights with contribution rights. *Sabey*, 101 Wn. App. at 590-91; *Radach*, 39 Wn. App. at 398 n.5. Those cases do not speak to the indemnity and contribution obligations of a settling defendant. Under RCW 4.22.060, contribution and indemnity rights do not survive settlement, except for those arising out of contractual arrangements between the parties. *Zamora*, 104 Wn.2d at 220.

Further, because Durham & Bates settled with the Tostes to avoid an appeal, the Tostes did not have the opportunity to fully litigate the issue of Durham & Bates's negligence. Thus, Durham & Bates cannot prevail on a claim of nonnegligence status.

In summary, we hold that Durham & Bates's CPA claim was actually a claim for indemnity, and that RCW 4.22.060 extinguished the implied contractual indemnity obligations of a settling defendant, including nonjoint tortfeasors. Thus, the trial court erred by granting Durham & Bates summary judgment on its CPA and equitable indemnity claims because neither survived MIMI's settlement with the Tostes. *Zamora*, 104 Wn.2d at 220.

## IV. GENUINE ISSUES OF MATEERIAL FACT

MIMI argues that even if Durham & Bates's claims survive the MIMI/Toste settlement, summary judgment was nonetheless inappropriate because there were genuine issues of material fact. It specifies issues of fact as to (1) whether its placement of the *F/V Ponderosa* insurance coverage constituted an unfair act or practice in violation of the CPA that proximately caused Durham & Bates's damages and (2) whether its actions were the sole cause of litigation between the Tostes and Durham & Bates, as an equitable indemnity claim requires. But because of our above holding that the MIMI/Toste settlement extinguished Durham & Bates's CPA and equitable indemnity claims, we do not address this issue.

## V. ATTORNEY FEES

Finally, Durham & Bates requests attorney fees on appeal. Because it did not prevail, the CPA provision allowing fees to a successful plaintiff is not applicable.

Accordingly, we reverse.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.