[No. 22123.   Department One.   July 30, 1930.]

A. O. NELSON, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.

GEORGE M. LEONARD, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

*L. B. DaPonte* and *J. W. Quick,* for appellant.
*Lord & Moulton,* for respondent.

MILLARD, J.—Upon the theory that their property was destroyed by fire caused by sparks negligently per-

[1]Reported in 290 Pac. 432.

mitted to be emitted from a locomotive owned and operated by the defendant railway company, A. O. Nelson and George M. Leonard, owner and lessee, respectively, of a barn near the defendant's line of railway, instituted separate actions to recover of defendant for destruction of that building and the personal property contained therein. By answer, the defendant denied the allegation that it—

". . . had carelessly and negligently failed to equip the locomotive of said freight train with an efficient spark arrester in that the screen used for arresting sparks in said locomotive was of such large mesh that sparks freely passed through the same, and that the same was useless and ineffectual for arresting sparks, and by reason thereof said locomotive when in operation emitted sparks such as to create a serious fire hazard to property past which said locomotive was operated, and defendant negligently and carelessly operated said freight train so that the locomotive thereof emitted sparks therefrom, which sparks blew over and on to the barn of plaintiff hereinbefore mentioned and set fire to said barn, thereby destroying the same."

The two causes were tried jointly in the court below, the jury finding that the fire which destroyed the property of the plaintiffs was set by sparks or burning embers thrown off from the engine of the defendant; that the spark arrester and appliances used for the arresting of sparks on the engine, at the time the engine passed the premises of the plaintiff, were not in good condition; that the spark arrester was defective on account of meshes in the screen being too large. The jury returned separate verdicts in favor of each plaintiff, and from judgments entered in accordance therewith, the defendant has appealed. By stipulation of the parties, the cases have been consolidated for the purpose of appeal.

Appellant contends that the verdict is not sustained by the evidence. It is argued that there was no evidence that the fire was started by a spark or live cinder from the engine, nor that a spark or cinder would set a fire three hundred and twenty-seven feet distant from the track; that there was an absence of evidence of negligent operation of the locomotive, or that the spark-arrester equipment, which was installed pursuant to the requirements of the boiler inspection act (Fed. Stat. Ann., vol. 8, p. 1205), was defective.

That contention cannot be upheld. Though the locomotive was equipped with a spark-arrester, there was evidence which, if believed, established the fact that the barn was ignited by sparks emitted from a locomotive of appellant; and there was evidence of the emission of cinders in such quantities, together with evidence that the mesh of the arrester was too large, authorizing submission to the jury of the question of the negligence of the appellant in the operation of its locomotive without having same equipped with an efficient spark-arrester.

The barn was of frame construction, sixty feet long, thirty feet wide, and thirty to thirty-five feet high. It was located three hundred and twenty-seven feet west of appellant's railway track, which runs northerly and southerly and is practically on a level. The railroad right-of-way is about thirteen feet higher than the land on which the barn stood. The fire started about two feet inside of the barn, in which were stored fifty tons of hay, on a wide board placed near the roof of the barn and extending over the runway in the barn. The end of the barn at which the fire started faced the railway tracks. The boards of the barn at this point were placed vertically, were ten to twelve inches wide and spaced almost an inch apart. The day was warm, dry and breezy, the wind blowing from the direction of the

railway track toward the barn to the west. There was testimony that, just prior to reaching a point parallel with the barn, about noon of the date of the fire, a freight train of appellant stopped and then started again. The train passed opposite the respondents' farm, the engine pulling hard and throwing large quantities of smoke and cinders over the barn. Witnesses for the appellant testified that the locomotive was not working hard; that the freight train was a light one, consisting of eight hundred and sixty-two tons, when the full tonnage for a locomotive of that type is thirty-two hundred tons.

One of the respondents testified that he was in the field east of the railroad track, approximately three hundred feet distant from the train, or six hundred and twenty-seven feet from the barn, when he saw smoke and cinders flying over the barn. He also testified that, at several times in the past, he stood by the barn, and cinders from locomotives of appellant poured down over him like hail. He was not asked by counsel for any of the parties, nor did he state, whether the cinders contained any heat. One of appellant's witnesses testified that live sparks could be carried by the wind a distance of eighty feet. When asked, on cross-examination, whether, if there were sufficient wind, live sparks could carry a quarter of a mile, or thirteen hundred and twenty feet, that witness testified "hardly likely a quarter of a mile." One of respondents testified that he saw smoke and cinders flying over the barn; that he weeded down to the end of a row of potatoes, looked toward the barn and saw smoke coming out through the cracks in the upper part of the barn at the east end or that part of the barn facing the railway. He testified:

"When I saw smoke starting through the barn, I started down hill to get to the barn and put the fire out,

naturally, and when I went in the barn door I saw this fire burning up on these two boards that run from the end of the barn out from the gangway, and they were covered with dry dust and chaff and stuff there, and cinders had lit in there and set that dust and chaff afire, and it was burning on those boards up there under that part of the roof.''

A former locomotive engineer of the Northern Pacific Railway Company testified on behalf of respondents that the screen, a sample of which was admitted in evidence, of the spark-arrester, was faulty in that the mesh was not sufficiently close together, thus enabling the escape of sparks from the locomotive. An employee of appellant, a front end and ash pan inspector, testified that, when the locomotive causing the fire came in from its run on the day of the fire, he inspected the spark-arrester and found it free from defects.

Appellant next contends that the insurance company having paid respondent Nelson for the loss of his property, and Nelson having assigned to the insurer his claim, thereby subrogating the insurer to all of respondent Nelson's rights, the insurance company is the real party in interest; therefore it is the only one entitled to prosecute the action.

On cross-examination, respondent Nelson testified that the company insuring his building against fire paid to him six hundred and fifty dollars, which was not the full value of his loss; and that he assigned his claim to the insurance company ''on blanks which are used by the insurance company for that purpose.'' From this, appellant argues, respondent Nelson cannot maintain an action in his own name either for the value of the property destroyed or the difference between the value and the amount of insurance collected.

We said in *Alaska Pacific Steamship Co. v. Sperry Flour Co.*, 94 Wash. 227, 162 Pac. 26:

"There is a fatal fallacy in the reasoning which concludes that the insured is made whole upon payment of the loss to him by the insurer, in that the premiums are not refunded to the insured so paid by him to the insurer for the policy of insurance and these premiums, if paid over some length of time, would aggregate a considerable sum of money. Nor does it seem that a wrongdoer should not respond for his wrongful act in damages to the insured and thereby profit by reason of the sagacity of the insured in keeping his property protected by insurance."

A copy of the assignment is not before us. Whether the assignment was made prior or subsequent to the commencement of this action, is not disclosed. If the insurer became entitled, by the assignment, of the terms of which we have not been apprised, to the interest of respondent Nelson, that assignee was the proper party to move in the matter of substitution. With the matter of adjustment or settlement between Nelson and the assignee insurer, the appellant has no concern. If the assignee did not elect to intervene and have the amount awarded to it in this action, but preferred to await the result of the action, relying upon an accounting with Nelson as to the insurer's subrogated rights, that could not prejudice the appellant. The judgment in favor of the insured will be a defense to any further action by the insurer against the appellant.

The judgments are affirmed.

MITCHELL, C. J., PARKER, and BEALS, JJ., concur.

TOLMAN, J., concurs in the result.