[No. 6837-4-III.   Division Three.   April 1, 1986.]

JEAN PICKETT, *Respondent,* v. STEPHENS–NELSEN, INC., *Appellant.*

*Mark J. Conlin,* for appellant.

*Edward J. Goss* and *Goss, Moe & Sampson,* for respondent.

*Bryan P. Harnetiaux, Robert H. Whaley,* and *Susan R. Davis* on behalf of Washington Trial Lawyers Association, amici curiae.

THOMPSON, J.—Stephens–Nelsen, Inc., appeals the reasonableness of a settlement releasing Terry Croskrey, a codefendant, in a misrepresentation and breach of contract action brought by Jean Pickett, d/b/a The Paper Trail Establishment. We affirm.

In 1982, Mrs. Pickett, who operated an accounting and word processing service, became interested in expanding her business through the acquisition of computer equipment and programs. Mrs. Pickett met and consulted with Mr. Croskrey, a Computerland, Inc., employee. Subsequently, Mr. Croskrey advised Mrs. Pickett that the necessary items could be obtained from Stephens–Nelsen; Mr. Croskrey also informed Mrs. Pickett that he was leaving Computerland for employment with Stephens–Nelsen.

Mrs. Pickett was then taken by Mr. Croskrey to meet Ron Fitzgerald, Stephens–Nelsen's sales manager. Both Mr. Croskrey and Mr. Fitzgerald assured Mrs. Pickett their equipment and programs were what she needed. Mrs. Pickett purchased the system by obtaining a $20,817 mortgage on her home. Although the equipment was installed, it never functioned properly, and was later found incapable of performing the functions specified by Mr. Fitzgerald and Mr. Croskrey.

On May 13, 1983, Mrs. Pickett commenced an action against Stephens–Nelsen and Mr. Croskrey alleging misrepresentation, breach of contract, breach of warranties, and Consumer Protection Act violations. Stephens–Nelsen and its counsel were notified on June 15, 1984, of a pending settlement wherein Mrs. Pickett was going to release Mr. Croskrey for $3,500. A hearing to determine the reasonableness of the settlement was set for June 19, 1984. Following this hearing, the court issued findings of fact and conclusions of law approving the settlement as reasonable. Trial that same day resulted in a judgment against Stephens–Nelsen for $26,646.49, plus costs and attorney fees. This figure includes the $3,500 credit for Mrs. Pickett's release of Mr. Croskrey pursuant to RCW 4.22.060(2).

Stephens–Nelsen claims it received inadequate notice of

the reasonableness hearing, the settlement acted as a release of Stephens–Nelsen, and the settlement was unreasonable. We have permitted the Washington State Trial Lawyers Association to file an amicus curiae brief in this appeal.

RCW 4.22.060(1) provides:

> Effect of settlement agreement. (1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement with a claimant shall give five days' written notice of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. The notice shall contain a copy of the proposed agreement. A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence. A determination by the court that the amount to be paid is reasonable must be secured. If an agreement was entered into prior to the filing of the action, a hearing on the issue of the reasonableness of the amount paid at the time it was entered into may be held at any time prior to final judgment upon motion of a party.

Although Stephens–Nelsen contends the notice provisions of this statute were not satisfied, the record indicates that Mr. Croskrey's attorney told Stephens–Nelsen's attorney on May 29 and 30, 1984, that Mr. Croskrey and Mrs. Pickett were negotiating a settlement and "were very close to an agreed amount", and if necessary, a reasonableness hearing would be held at the time of trial. On June 7, 1984, Mr. Croskrey's counsel informed Stephens–Nelsen that Mrs. Pickett and Mr. Croskrey had agreed to settle for $3,500. Therefore, Stephens–Nelsen had actual notice of the hearing more than the required 5 days in advance.

In addition, the statute permits the notice period to be reduced by the court for good cause. RCW 4.22.060(1). Although Stephens–Nelsen claims the court's authorization for a shortened notice period must be evidenced by a written court order, no such language appears in the statute. The statute merely states: "[t]he court may for good cause authorize a shorter notice period". Although the record

does not reflect the specific reasons for the shortened notice period, the court did state at the reasonableness hearing:

Mr. Conlin, I recognize the fact that financial affidavits and etcetera have not been supplied to us. However, I am aware as in talking to you, that this matter was discussed of earlier date, and I do feel under the circumstances, again, that $3,500.00 as an offer under reasonableness, is acceptable and will permit it.

■ Finally, Stephens–Nelsen did not ask for additional time to prepare nor did it object to the notice period at the hearing. A party may waive the right to assert noncompliance with this statute, providing no prejudice ensues. *Zamora v. Mobil Oil Corp.,* 104 Wn.2d 211, 222–23, 704 P.2d 591 (1985). There is neither an assertion nor indication from the record that Stephens–Nelsen was prejudiced by the shortened notice period. Consequently, we hold the notice received by Stephens–Nelsen satisfied RCW 4.22-.060(1).

Next, Stephens–Nelsen contends it was also released by the settlement. We disagree. The Legislature overruled the common law and established a right of contribution between joint tortfeasors with the enactment of the tort reform act in 1981. Laws of 1981, ch. 27, § 12, codified as RCW 4.22.040;[1] *Scott v. Cascade Structures,* 100 Wn.2d

---

[1]RCW 4.22.040 provides:

"Right of contribution—Indemnity. (1) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution among liable persons is the comparative fault of each such person. However, the court may determine that two or more persons are to be treated as a single person for purposes of contribution.

"(2) Contribution is available to a person who enters into a settlement with a claimant only (a) if the liability of the person against whom contribution is sought has been extinguished by the settlement and (b) to the extent that the amount paid in settlement was reasonable at the time of the settlement.

"(3) The common law right of indemnity between active and passive tort feasors is abolished: *Provided,* That the common law right of indemnity between active and passive tort feasors is not abolished in those cases to which a right of contribution by virtue of RCW 4.22.920(2) does not apply."

537, 541, 673 P.2d 179 (1983); *Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 711, 658 P.2d 1230 (1983). RCW 4.22.060(2) provides:

A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.

█ Generally, claims against a principal and an agent are treated as separate claims *only* when the plaintiff settles with an agent who is financially unable to compensate the plaintiff. *Glover,* at 724. Plaintiffs may protect their right to proceed against the principal by asking the judge to state on the record at the reasonableness hearing that in approving the settlement the fact full compensation was unlikely to be obtained from the settling defendant was considered. *Glover,* at 724 n.4. Here, both the findings of fact and the report of proceedings reflect the trial judge considered evidence regarding Mr. Croskrey's ability to fully compensate Mrs. Pickett:

IV.

Defendant Terry Croskrey apparently has no liability insurance with which to respond to plaintiff's potential judgment for damages.

V.

Defendant Terry Croskrey is a resident of the State of Alaska which could pose difficulties to plaintiff in enforcing a potential judgment against defendant Terry Croskrey.

VI.

Defendant Terry Croskrey has insufficient personal assets with which to respond to a potential judgment against him by plaintiff Jean Pickett.

## VII.

The $3,500 offered in settlement by defendant Terry Croskrey would not fully compensate plaintiff for her alleged damages, but is acceptable to plaintiff due to Terry Croskrey's financial limitations.

Additionally, release of Mr. Croskrey did not affect Stephens–Nelsen's liability for the wrongdoing of its agent Mr. Fitzgerald. Finally, Stephens–Nelsen attacks the trial court's factual determination that Mr. Croskrey would be unable to fully compensate Mrs. Pickett. However, since Stephens–Nelsen offered no evidence on this issue, the record contains only uncontroverted evidence. Consequently, there is no basis to disturb this factual determination on appeal. *Glover,* at 718.

Next, Stephens–Nelsen claims the court erred in determining the settlement was reasonable. Both Mrs. Pickett and amicus urge this court to adopt rules for handling a reasonableness hearing, including a rebuttable presumption that a settlement is reasonable where there is no collusion between the settling parties.

A finding of reasonableness is a factual determination which will not be disturbed on appeal when supported by substantial evidence. *Glover,* at 718. Thus, review is limited to determining whether "[t]he findings are amply sustained by the proofs". *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

At the hearing, Stephens–Nelsen objected to the findings prepared by Mrs. Pickett claiming neither "the plaintiff nor her attorney has provided any information or material or evidence to prove or substantiate those findings". However, Stephens–Nelsen presented no evidence to controvert Mrs. Pickett's affidavits and the testimony of Mr. Croskrey's attorney that there was neither liability insurance nor other assets from which to satisfy a judgment, and enforcement of any judgment would be difficult since Mr. Croskrey now resided in Alaska. It is incumbent upon a party having a significant interest in seeing that the settlement is found to be unreasonable to present some evidence to controvert the

settling parties' evidence.[2] *Glover,* at 716. Here, the uncontroverted evidence supports the trial court's reasonableness determination. *See Wilson v. Steinbach,* 98 Wn.2d 434, 438, 656 P.2d 1030 (1982) (an attorney's affidavit based upon personal knowledge entitled to same consideration as any other affidavit).

■ Stephens–Nelsen also argues the trial court failed to consider all nine *Glover* factors when approving the settlement. *Glover,* at 717, sets forth the following factors:

[T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.[3]

*Glover* emphasized, however, while each factor was a consideration, the trial court should not allow any one factor to control. Rather, the court should use its discretion and weigh each case individually. *Glover,* at 718. "The trial courts will determine the reasonableness of the settlement agreements on a case–by–case basis, analyzing a number of potential factors." Talmadge, *Washington's Product Liability Act,* 5 U. Puget Sound L. Rev. 1, 19 (1981).

■ Mrs. Pickett and amicus also argue, in the absence of collusion or fraud, a settlement should be entitled to a

---

[2]We see a similarity between a reasonableness hearing and a motion for summary judgment where the moving party has the initial burden of proof. Once the moving party proves by uncontroverted facts that no genuine issue of material fact exists, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. *Rathvon v. Columbia Pac. Airlines,* 30 Wn. App. 193, 201, 633 P.2d 122 (1981), *review denied,* 96 Wn.2d 1025 (1982).

[3]The amicus brief recommends the deletion of the last two factors and the substitution of "the societal interest in cultivating settlements as a factor". However, once the Supreme Court has decided an issue of state law, that interpretation is binding on all lower courts until overruled by that court. *State v. Gore,* 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

presumption of reasonableness which the challenging party may rebut by clear, cogent and convincing proof. Public policy and California case law are cited as authority. However, when the Washington Supreme Court construed RCW 4.22.060, it rejected the California courts' interpretation. *Glover,* at 717. At the time *Glover* was decided, California required a finding only that the parties acted in good faith in approving settlements under the contribution statute. In 1985, the California Supreme Court determined that good faith alone was not sufficient, and set forth a number of factors to be considered. *Tech–Bilt, Inc. v. Woodward–Clyde & Assocs.,* 38 Cal. 3d 488, 698 P.2d 159, 213 Cal. Rptr. 256 (1985); *Barth–Wittmore Ins. v. H.R. Murphy Enters., Inc.,* 169 Cal. App. 3d 124, 214 Cal. Rptr. 894 (1985). Now, in California, as in Washington, the good or bad faith of a settlement is a question of fact to be determined by the trial court based on the evidence presented by the parties. *Barth–Wittmore,* 214 Cal. Rptr. at 898. Therefore, reliance upon California law for a presumption of reasonableness rule is misplaced. *See also In re MGM Grand Hotel Fire Litig.,* 570 F. Supp. 913 (D. Nev. 1983).

Furthermore, *Glover* emphasized the need for evidence regarding the reasonableness of the settlement to avoid "sweetheart deals": "The reasonableness of the release will depend on various factors including the provable liability of the released parties and the liability limits of the released party's insurance". *Glover,* at 716 (quoting the Senate Select Committee on Tort and Product Liability Reform Final Report, at 54). To adopt a presumption of reasonableness rule would be at odds with *Glover* and the purpose of the legislation, *e.g.,* to ensure more equitable distribution of payment among defendants according to liability. *Glover,* at 717. *See also Tech–Bilt,* 213 Cal. Rptr. at 262 (California's contribution statute is based on the policies of settlement and equity).

■■ Amicus also raises the question of whether the court may dispense with the rules of evidence and use the same documentary proof the parties relied upon in reaching

a settlement, *e.g.,* police reports, medical reports, etc. Since this issue is raised only by the amicus brief, it need not be considered on review. *Coburn v. Seda,* 101 Wn.2d 270, 279, 677 P.2d 173 (1984). However, we note the procedures for handling evidence at these hearings are within the trial court's discretion. Thus, the trial judge may require the assistance of experts or less traditional evidence depending upon the complexity of the issues. *Glover,* at 718 n.3.

Finally, Mrs. Pickett's request on appeal for attorney fees in the amount of $1,700 is granted. RAP 18.1; *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 601, 675 P.2d 193 (1983).

Affirmed.

GREEN, C.J., and MCINTURFF, J., concur.