[No. 17280-8-I.   Division One.   August 10, 1987.]

DOROTHY MEYER, *Individually and as Personal Representative, Appellant,* v. BIRNEY N. DEMPCY, *Respondent.*

*Philip A. Talmadge, Bruce E. Larson,* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow,* for appellant.

*H. Graham Gaiser* and *Gaiser & Tibbs,* for respondent.

PEKELIS, J.—Dorothy Meyer, as personal representative of her husband's estate and as a surviving spouse (hereinafter the Meyers), sued their attorney, Birney N. Dempcy, for legal malpractice. In their complaint, the Meyers contended that Dempcy's failure to advise Mrs. Meyer to probate her husband's estate subjected the estate to medical malpractice claims 5 years after his death. The trial court granted summary judgment in favor of Dempcy on grounds that (1) the Meyers sustained no actual damages as a result of the alleged malpractice, and (2) the Meyers' insurer could not be subrogated to pursue the action against Dempcy. We affirm.

## FACTS

Dorothy Meyer, both individually and as the representative of her husband's estate, brought an action for legal malpractice against her attorney, Birney N. Dempcy, and his former partners to recover the amounts paid by Dr. Meyer's malpractice carrier to defend and settle two lawsuits. The parties stipulated to the following facts:

The Meyers engaged Dempcy to plan their estate and Dempcy prepared instruments creating funded revocable trusts. Dr. Meyer, a pediatrician, died on March 24, 1970. Mrs. Meyer retained Dempcy to wind up the affairs of the estate. The estate was not probated, apparently to accommodate Dr. and Mrs. Meyer's wish to avoid probate proceedings.[1]

---

[1] If Mrs. Meyer's lawsuit had proceeded, she would have testified (1) that although she desired to avoid probate, she would have probated the estate had

On March 31, 1975, two of Dr. Meyer's former patients sued the estate for medical malpractice. If Dr. Meyer's estate had been probated at the time of his death, the medical malpractice lawsuits filed in 1975 would have been barred by the probate nonclaim statute then in effect.[2] Dr. Meyer's malpractice insurance carrier, Maryland Casualty Company, settled the malpractice claims for $77,500 and incurred defense costs of $23,000. Neither Mrs. Meyer nor the estate suffered any financial loss as a result of the medical malpractice lawsuits.

After considering facts stipulated by counsel and "other materials in the court file", the trial court dismissed the Meyers' lawsuit on the grounds that (1) neither Mrs. Meyer nor the estate sustained actual damages as a result of Dempcy's alleged malpractice; and (2) the Meyers' liability insurer could not be subrogated to pursue the action against Dempcy. The Meyers' filed this appeal.

## ANALYSIS

## I

### STANDARD OF REVIEW

■ The Clerk's Papers do not include Dempcy's motion to dismiss the Meyers' complaint. Dempcy did, however, answer the Meyers' complaint. "Where an answer is filed prior to a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6), the motion will be considered one for judgment on the pleadings pursuant to CR 12(c)." *Blenheim v. Dawson & Hall*,

---

Dempcy so recommended, and (2) that Dempcy did not advise her of the probate nonclaim statute or its consequences, particularly as to lawsuits brought by minors. However, Dempcy would have testified that he did advise the Meyers of the availability of probate proceedings. Mrs. Meyer would also have presented expert testimony that the standard of care for attorneys required advising clients about the probate nonclaim statute and its consequences.

[2]While the parties stipulated to this conclusion, Dempcy did not concede that had the estate been probated, the plaintiffs would *not* have timely filed their malpractice lawsuits. Thus, one can only speculate whether the plaintiffs would have filed their lawsuit within the statutory period in response to the notice of probate.

*Ltd.,* 35 Wn. App. 435, 437, 667 P.2d 125, *review denied,* 100 Wn.2d 1025 (1983). In dismissing the action, however, the trial court apparently considered facts stipulated by counsel as well as "other materials in the court file." Where the trial court considers matters outside the pleadings, a motion to dismiss under CR 12(c) will be considered as a motion for summary judgment. *Blenheim,* 35 Wn. App. at 438.

In reviewing summary judgment motions, the appellate court "takes the position of the trial court, assuming facts most favorable to the nonmoving party." *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). The moving party bears the burden of proving that there is no genuine issue of material fact necessitating trial and that he or she is entitled to judgment as a matter of law. *Hartley,* 103 Wn.2d at 774.

## II
### COLLATERAL SOURCE RULE

The Meyers contend that they may pursue their claim for malpractice against Dempcy even though their insurer covered their entire loss. They argue that the collateral source rule makes the fact that Maryland Casualty covered their loss inadmissible. Dempcy answers that the collateral source rule should not apply where the "injury" sustained is not personal injury or property damage, but a *judgment* against the injured person in an unrelated lawsuit.

Generally, plaintiffs who receive payments from their insurers covering all or part of their loss are not precluded from suing their tortfeasors. *Alaska Pac. S.S. Co. v. Sperry Flour Co.,* 94 Wash. 227, 230, 162 P. 26 (1917); *accord, Consolidated Freightways v. Moore,* 38 Wn.2d 427, 430, 229 P.2d 882 (1951); *Lyons v. Freeborg,* 3 Wn.2d 380, 381, 100 P.2d 1041 (1940); *Wood & Iverson, Inc. v. Northwest Lumber Co.,* 141 Wash. 534, 536, 252 P. 98 (1927); *Criez v. Sunset Motor Co.,* 123 Wash. 604, 609–10, 213 P. 7, 32 A.L.R. 627 (1923). The purpose of this rule is to prevent the wrongdoer from avoiding liability merely because the

plaintiff's loss was covered by insurance. *Sperry,* 94 Wash. at 231. In keeping with this policy of giving the victim rather than the tortfeasor any "windfall" in the recovery of damages, the collateral source rule forbids consideration of payments received by the plaintiff from sources wholly independent of and collateral to the wrongdoer which have a tendency to mitigate the consequences of the injury to reduce damages otherwise recoverable. *Ciminski v. SCI Corp.,* 90 Wn.2d 802, 804, 585 P.2d 1182 (1978); *Bowman v. Whitelock,* 43 Wn. App. 353, 357, 717 P.2d 303 (1986).

Dempcy acknowledges that the collateral source rule generally makes any evidence that the plaintiff was reimbursed for his or her loss inadmissible. He argues, however, that the collateral source rule is inapplicable in this case and cites *Kirtland & Packard v. Superior Court,* 59 Cal. App. 3d 140, 131 Cal. Rptr. 418 (1976) to support his argument. In *Kirtland,* two physicians were sued for medical malpractice. Both physicians were insured and their insurers defended the malpractice action. Before the jury verdict, the plaintiff settled with one of the physicians. The jury returned a verdict against both physicians and the amount of the settlement was deducted from the judgment. The insurer paid both the settlement and the judgment in full. The physician against whom judgment was rendered sued the attorneys who represented him for legal malpractice, claiming as damages the entire judgment rendered against both physicians. The question presented was whether the fact that the insurer paid the judgment on behalf of the physicians precluded the physician–plaintiff from claiming that judgment as an item of damages in his legal malpractice suit.

California's collateral source rule, which is practically identical to Washington's, provides that "if an injured person receives compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which he would otherwise collect from the tortfeasor." *Kirtland,* at 145. The *Kirtland* court held that the collateral source rule applies

where the injured person has sustained personal injuries or property damage, but not in cases where "the injury sustained by the injured person was an award against him in an unrelated lawsuit of damages which he personally was never called on to pay." *Kirtland,* at 145; *accord, Weiss v. Field,* 100 Cal. App. 3d 487, 161 Cal. Rptr. 74, 78 (1979).[3]

We find the reasoning of *Kirtland* persuasive, particularly given the facts presented here. The vast majority of Washington cases applying the collateral source rule involves plaintiffs who have received payments for *personal injuries* inflicted by the tortfeasor. *See, e.g., Ciminski* (Medicare benefits); *Stone v. Seattle,* 64 Wn.2d 166, 391 P.2d 179 (1964) (social security and veterans pension benefits); *Sutton v. Shufelberger,* 31 Wn. App. 579, 643 P.2d 920 (1982) (disability pension benefits); *Boeke v. International Paint Co.,* 27 Wn. App. 611, 620 P.2d 103 (1980) (workers' compensation benefits), *review denied,* 95 Wn.2d 1004 (1981).

Here, Mrs. Meyer concedes that neither she nor Dr. Meyer's estate suffered any actual loss. The alleged loss was the estate's exposure to liability for Dr. Meyer's medical malpractice. Because Maryland Casualty Company was required to and did pay, pursuant to the terms of its policy, the costs of defending and settling the lawsuit against Dr. Meyer's estate, the Meyers' "exposure to liability" was theoretical, not actual.[4] We hold that the collateral source rule does not apply where, as here, a plaintiff sustains a "loss"

---

[3]The *Kirtland* court also noted that the insurer was both the client and the employer of the alleged tortfeasors (the attorneys) and "[f]or this reason alone, the collateral source rule cannot apply." *Kirtland,* at 145.

[4]The *Kirtland* court also held that neither the portion of the judgment which represented the sum paid on behalf of the settling physician, nor the portion paid by the insurer on behalf of the physician now suing his attorneys, constituted an "appreciable harm." Thus, the physician–plaintiff could not recover against his attorney for legal malpractice. *Kirtland,* at 146 (citing *Budd v. Nixen,* 6 Cal. 3d 195, 200, 491 P.2d 433, 436, 98 Cal. Rptr. 849, 852 (1971) (until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for legal malpractice)). Because we hold that the collateral source rule does not apply, we do not address whether, as a matter of law,

that is a judgment or settlement in an unrelated lawsuit that he or she is never called on to pay.

## III
### SUBROGATION

Maryland Casualty contends that even if the Meyers did not sustain any actual damages, it nevertheless acquired a subrogation claim against Dempcy when it paid the cost of defending and settling the malpractice claims against Dr. Meyer's estate. Dempcy answers that Maryland Casualty may not be subrogated to pursue a claim against Dempcy to recover a loss it was required to pay because of its insured's own negligence.

■ Generally, an insurer who pays a loss under its policy acquires a subrogation claim against the wrongdoer responsible for the loss. *General Ins. Co. of Am. v. Stoddard Wendle Ford Motors,* 67 Wn.2d 973, 976, 410 P.2d 904 (1966). However, this right of subrogation is equitable, enforced only "in favor of a meritorious claim and after a balancing of the equities.'" *Transamerica Title Ins. Co. v. Johnson,* 103 Wn.2d 409, 417, 693 P.2d 697 (1985) (quoting *Castleman Constr. Co. v. Pennington,* 222 Tenn. 82, 97, 432 S.W.2d 669 (1968)). Thus, when an insured's negligence causes the loss, the insurer acquires no subrogation claim. 16 G. Couch, *Insurance* § 61:222 (2d ed. 1983).

While we have been unable to find any Washington authority on point, Dempcy cites persuasive California authority to support his contention that Maryland Casualty has no subrogation right to pursue a malpractice claim against him. In *Mid–Century Ins. Co. v. Hutsel,* 10 Cal. App. 3d 1065, 89 Cal. Rptr. 421 (1970), a driver, insured by Mid–Century, was involved in an automobile accident while he was permissively driving his stepfather's car. His stepfather had engaged Hutsel, an insurance agent, to procure automobile insurance, but Hutsel had negligently failed

---

a client may not sustain a cause of action for legal malpractice against her attorney where the alleged injury is a judgment against the client in an independent lawsuit that the client's insurer pays.

to procure it. The court held that Mid–Century did not acquire a subrogation claim against the insurance agent to recover sums it was independently required to pay under its policy because of the negligence of its insured. *Hutsel,* at 1070. The court reasoned that the insurance agent's failure to procure insurance "had nothing to do with the accident." *Hutsel,* at 1070.

Similarly, Dempcy's failure to probate Dr. Meyer's estate "had nothing to do" with Dr. Meyer's medical malpractice. Maryland Casualty's loss in defending and settling the medical malpractice lawsuits was not caused by Dempcy's alleged malpractice, but by Dr. Meyer's own negligence. Had the malpractice claim against Dr. Meyer exceeded the policy limits, the *Meyers* might have had an actionable claim against Dempcy to recover the amount of loss over the policy limits. However, in no case would Maryland Casualty be subrogated to sue Dempcy. The Meyers paid a premium for insurance to protect them from medical malpractice liability, and Maryland Casualty was contractually obligated to cover those claims. Maryland Casualty may not now avoid its contractual obligations under the guise of subrogation. Accordingly, we hold that Maryland Casualty cannot be subrogated to sue Dempcy for a loss caused by its own insured.

Affirm.

RINGOLD, A.C.J., and GROSSE, J., concur.

Review denied by Supreme Court November 3, 1987.