[No. 9287–9–III. Division Three. January 25, 1990.]

ROBERT L. FRASER, *as Guardian ad Litem,* ET AL,
*Plaintiffs,* v. CHESTER WAYNE BEUTEL,
ET AL, *Defendants,* SUNSET CAFE &
QUETZAL ROOM, INC., *Respondent,*
JERRI TAPPER, ET AL,
*Appellants.*

*Philip A. Talmadge, Talmadge & Friedman,* and *Thomas Fitzpatrick,* for appellants.

*Robert L. Parlette, Carol A. Wardell,* and *Davis Arneil Law Firm,* for respondent.

THOMPSON, J.—Jerri and John Doe Tapper, d/b/a The Brass Bucket (Brass Bucket) appeal a $500,000 judgment entered in favor of the Sunset Cafe and Quetzal Room, Inc. (Sunset), in an action for contribution. The $500,000 is 50 percent of the $1 million Sunset paid to Lori Hill and her family to settle claims arising out of an accident in which

Mrs. Hill was struck and injured by Chester Beutel, a drunk driver who had been served alcohol by Sunset. Sunset alleged that the Brass Bucket also served Mr. Beutel and Douglas Detwiler, the owner of the car Mr. Beutel was driving at the time of the accident. We hold the court erred when it excluded evidence relevant to the issue of the Brass Bucket's comparative fault for Mrs. Hill's injuries. Therefore, we reverse the judgment.

On June 14, 1985, Chester Beutel hit and seriously injured Lori Hill as she was jogging. In March 1986, Mrs. Hill and her family brought an action against Mr. Beutel, Douglas Detwiler, the State of Washington, and the Sunset Cafe. Sunset negotiated a $1 million settlement with the Hills under which the Hills released and discharged all claims they had against Sunset, the Brass Bucket, and the Caboose and the Office Taverns. Sunset then brought this third party action against the Brass Bucket, seeking contribution to the settlement. It relied on RCW 4.22.040, which provides:

> (1) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. . . . The basis for contribution among liable persons is the comparative fault of each such person. . . .
> (2) Contribution is available to a person who enters into a settlement with a claimant only (a) if the liability of the person against whom contribution is sought has been extinguished by the settlement and (b) to the extent that the amount paid in settlement was reasonable at the time of the settlement.

A reasonableness hearing was held, after which the court entered findings, conclusions, and order determining that Sunset's settlement with the Hills was reasonable. The Brass Bucket did not attend the reasonableness hearing, having received only telephonic notice 1 day in advance. It did not receive a copy of the settlement agreement until after the hearing.

The court severed Sunset's action for contribution from the Hills' action against the remaining defendants. At trial of the contribution action, the court granted Sunset's

motion in limine to exclude evidence of the other drinking done by Mr. Beutel and Mr. Detwiler before the accident. It stated:

> The evidence and issues to be tried are limited to the comparative fault of Sunset Cafe and Tappers only. All testimony or evidence regarding drinking or other events occurring at places other than at the Brass Bucket and the Sunset Cafe are unnecessary and irrelevant because the court will read to the jury a statement of facts containing a summary of the other events of June 14, 1985.

Before any testimony was heard, the court read the following statement to the jury as part of instruction 2:

> On June 14, 1985, at around noon, Douglas K. Detwiler joined Chester Wayne Beutel, who had been drinking alcoholic beverages most of the morning. When Douglas Detwiler joined Chester Beutel, he realized that Chester Beutel was affected by alcohol. Throughout the balance of the afternoon and early evening, Doug Detwiler and Chester Beutel continued to drink alcoholic beverages. The continued drinking resulted in Doug Detwiler becoming intoxicated and Chester Beutel becoming progressively grossly intoxicated.
>
> One of the places at which the men drank June 14, 1985, was the Sunset Cafe. Both men arrived at the Sunset Cafe a few minutes after 5:00 p.m. and the bartender served each of them. After leaving the Sunset Cafe, the men went to the Brass Bucket Tavern, arriving there a few minutes after 6:00 p.m. After the two men left the Brass Bucket, they continued their drinking elsewhere.
>
> Doug Detwiler, while intoxicated, negligently entrusted his car keys to Chester Beutel and directed him to drive the car and park it approximately 1/4 mile away in order for Doug Detwiler to escape detection by the police for his own driving while intoxicated and driving while his license was suspended. At approximately 7:50 p.m., Mr. Chester Beutel took the keys to Mr. Detwiler's vehicle and drove it away. While speeding and driving in a reckless manner, Chester Beutel struck Lori Hill who was jogging alongside of the road. Mrs. Hill had run from the side of the road into a field to avoid being struck, but the vehicle followed her into the field and struck her with great force.
>
> After the accident, Mr. Beutel's blood alcohol level was .31% and Mr. Detwiler's was .14%.

The jury heard testimony that Sunset served Mr. Beutel and Mr. Detwiler each two mixed drinks. A patron of the Brass Bucket described the two men as "out of control"

when they arrived there. Pam Pierce, the bartender, stated Mr. Beutel was "very unsteady". However, the testimony was disputed as to whether the Brass Bucket served the men. Several witnesses denied it, but Mr. Detwiler said he ordered two rounds of schooners for Mr. Beutel and himself. In addition, a patron named Kathy Oyler said that she sat with Mr. Beutel while he drank two beers. The court did not allow testimony nor instruct as to the amount, sources, and timing of the men's consumption of other alcohol.

The court also excluded certain opinion testimony of the Brass Bucket's expert, David Predmore. In an offer of proof, Mr. Predmore stated:

Q. . . . Mr. Predmore, if Chet Beutel, . . . consumed 10 ounces of beer between 6:00 and 6:15 P.M. that evening, what part of his .31 blood alcohol level that was measured after the accident would have been attributable to that 10 ounces of beer?

A. Less than .01.

Q. So, if he had not had that beer at the Brass Bucket, that 10 ounce beer, what would his blood alcohol level be?

A. .30.

Q. Is there any significant difference, in your opinion, between the impairment of Chester Beutel and driving an automobile at blood level .31 versus .30?

A. No.

Q. Based upon your training, experience to which you have testified and based upon the assumed facts that I have given you, that he drank at the Brass Bucket and you may assume he had 10 ounces of beer or 20 ounces of beer, do you have an opinion professionally with a reasonable degree of scientific certainty as to whether or not an accident at 7:50 P.M. would have been caused in part by the beer consumed at the Brass Bucket?

A. The difference in level was not significant enough to change my opinion as far as causation and that's whether .29 or .31, his driving ability is just as bad.

Q. You think it more likely than not, this accident would have happened regardless of having that beer at the Brass Bucket?

A. I do.

The jury returned a verdict finding the relative fault of Sunset and the Brass Bucket to be equal. Judgment was

entered for Sunset in the amount of $500,000, one-half of the settlement.

The dispositive issue is whether the court erred when it excluded (1) evidence of the other drinking, and (2) Mr. Predmore's expert testimony. We hold the excluded evidence is relevant to a material issue relating to Sunset's claim for contribution.

Under RCW 4.22.040, the basis of contribution is the "comparative fault" of persons liable for the same injury. Here, the persons potentially liable for Mrs. Hill's injuries include not only Sunset and the Brass Bucket, but the three other defendants named in the Hills' complaint: Mr. Beutel, Mr. Detwiler, and the State of Washington. The settlement agreement also refers to the Caboose Tavern and the Office Tavern. Nevertheless, Sunset argues that the trial court properly limited the issue before the jury to the comparative fault of Sunset and the Brass Bucket. It contends the court's earlier determination that the $1 million settlement was a reasonable amount for release of the entities named there eliminated any need to address the comparative fault of the other persons.

Sunset's argument fails for two reasons. One, the settlement agreement releases entities other than Sunset and the Brass Bucket. At a minimum, the Brass Bucket was entitled to show that its proportion of liability was reduced by the comparative fault of the Caboose and the Office Taverns. The second and more basic reason is that due process requires that the released but nonsettling defendant have sufficient notice of the reasonableness hearing to allow it to participate and raise issues challenging the settlement as too high. Without such notice, the nonsettling defendant is not bound by the determination of reasonableness. Our examination of the facts convinces us that the Brass Bucket did not receive sufficient notice of the reasonableness hearing.

RCW 4.22.060 reads:

(1) A party prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement

with a claimant *shall give five days' written notice* of such intent to all other parties and the court. The court may for good cause authorize a shorter notice period. *The notice shall contain a copy of the proposed agreement.* A hearing shall be held on the issue of the reasonableness of the amount to be paid with all parties afforded an opportunity to present evidence.[1]

(Italics ours.) Neither Sunset nor plaintiffs complied with the notice provisions of this statute.

The importance of notice of the reasonableness hearing to the Brass Bucket cannot be overemphasized. Under RCW 4.22.040, a settling defendant can seek contribution from a nonsettling, released defendant to the extent the amount paid in settlement was *reasonable* at the time of the settlement. Thus, the reasonableness hearing considered issues critical to the Brass Bucket's liability for contribution. This fact should have been apparent to Sunset, since the Brass Bucket was one of the entities released in its settlement with the Hills. Yet Sunset did not comply with the requirements of RCW 4.22.060. It did not provide notice of the hearing to the Brass Bucket, or information regarding terms of the settlement. What notice was given was by the attorney for the Hills, who telephoned the Brass Bucket's attorney just 1 day prior to the hearing. When the attorney for the Brass Bucket asked for a copy of the settlement agreement, Sunset's attorney replied by letter received on December 12, 1986, the day of the hearing:

> I'll be glad to send you the settlement documents . . . whenever you send to me the statement that Ranger Insurance took from Kathy Oyler and the three to four other witnesses referred to in your past correspondence.

---

[1]Harris, *Washington's Unique Approach to Partial Tort Settlements: The Modified Pro Tanto Credit and the Reasonableness Hearing Requirement,* 20 Gonz. L. Rev. 69, 113 (1984–1985) states:

> There are only two tort litigation settings in which a reasonableness hearing should be conducted. A hearing must be conducted (1) to fix the amount of an unreleased, non–settling defendant's credit *or* (2) to set the reasonable amount that will be apportioned between a settling defendant and a released, non–settling defendant when the settling defendant's contribution claim is subsequently litigated.

Notwithstanding, Sunset contends the Brass Bucket waived the statutory notice requirements because it did not attend the hearing and object to the untimely telephonic notice given and request more time to prepare. It cites *Zamora v. Mobil Oil Corp.,* 104 Wn.2d 211, 222, 704 P.2d 591 (1985) and *Pickett v. Stephens–Nelsen, Inc.,* 43 Wn. App. 326, 329, 717 P.2d 277 (1986). We find the cited cases distinguishable.

In *Zamora,* at 222, the court stated:

> The 5–day written notice to parties requirement of the statute, RCW 4.22.060(1), is much the same as the requirement for a 5–day notice of presentation for findings of fact (CR 52(c)) and the 5–day notice of presentation for judgments (CR 54(f)(2)). Under these latter two rules, 5 days' notice is required *unless a party in some manner waives such notice or the trial court for cause shown shortens the time—providing that, in either event, no prejudice ensues.* By analogy, we hold that these same principles should be applicable to the situation before us.

(Footnote omitted. Italics ours.)

The liability and contribution phases of the trial were bifurcated in *Zamora.* The possibility a settlement was at hand arose during the trial of the liability issue. Counsel for the settling defendant called the attorney for the contribution defendant and told him that there was going to be a hearing that afternoon. The court held at page 223 that the contribution defendant had waived the statutory right to written notice, based on the foregoing facts and the fact that

> settlement of the liability case was reached well into a hotly contested jury trial and the reasonableness hearing was conducted before the same trial judge . . . Accordingly, there is nothing whatsoever in the situation presented in this case which suggests that the settlement was a "sweetheart deal" to the prejudice of the nonsettling [contribution defendant].

(Footnotes omitted.)

In contrast, the settlement here was entered into *before* damages and comparative fault had been examined in an adversarial setting. Sunset does not offer a satisfactory reason for its failure to comply with the notice requirements, nor are we aware of any circumstances which mandated

either short notice or no notice. Rather, the circumstances on their face indicate that Sunset had ample time to provide the Brass Bucket with written notice prior to the hearing. The record contains a copy of the release, which is signed and dated December 4, 1986. The hearing was not held until December 12.

In *Pickett,* a defendant challenged a settlement entered into by the plaintiff and another defendant as unreasonable. It contended the notice provision of RCW 4.22.060(1) was not satisfied. The court in *Pickett* found otherwise. There, the reasonableness hearing was held on June 19, 1984; the record indicated that although written notice had not been given until June 15, defendant's counsel had been advised of settlement negotiations on May 29 and 30 and was told the amount of the settlement on June 7. The court held at page 329 that the defendant had actual notice of the hearing more than the required 5 days in advance.

■ Here, the affidavits establish that the only notice of the hearing received by the attorney for the Brass Bucket was by telephone just 1 day in advance. Without a copy of the settlement agreement, counsel could not intelligently determine whether to oppose the amount of the settlement. His office was in Seattle; the hearing was in Ellensburg. His client only recently had been named as a third party defendant; realistically, he had had no time to make any discovery. He advised counsel by phone that he was objecting to the proceeding. In these circumstances, we hold counsel did not waive his client's rights to object to the reasonableness of the settlement by not appearing and asking for additional time to prepare. To hold otherwise is to say *Zamora* and *Pickett* totally abrogated the statutory notice requirement. Those cases are limited to their facts.

■ Thus, we hold the reasonableness of the settlement, as to the Brass Bucket, was at issue in the contribution action.[2] In this context, it was reversible error for the trial

---

[2]The reasonableness determination is binding as to the Hills and Sunset, however.

court to exclude evidence of the other drinking of Mr. Beutel and Mr. Detwiler. Since Sunset did not utilize the reasonableness hearing in the manner in which the Legislature intended, the issue of reasonableness was a viable issue in the contribution action. *See* Restatement (Second) of Torts § 886A, comment *d* (1979), which states: "The reasonableness of the settlement is always open to inquiry in the suit for contribution, and the tortfeasor making it has the burden of establishing the reasonableness of the payment he has made."

 Mr. Predmore's opinion testimony also is relevant to the issue of the Brass Bucket's comparative fault for Mrs. Hill's injuries. The test for admissibility of expert testimony is whether the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . .". ER 702; *Davidson v. Metropolitan Seattle,* 43 Wn. App. 569, 571, 719 P.2d 569, *review denied,* 106 Wn.2d 1009 (1986). The admissibility of such evidence is largely within the discretion of the trial court. *Davidson,* at 572. "'[i]f the reasons for admitting or excluding the opinion evidence are both fairly debatable, the trial court's exercise of discretion will *not* be reversed on appeal.'" *Davidson,* at 572 (quoting *Levea v. G.A. Gray Corp.,* 17 Wn. App. 214, 220–21, 562 P.2d 1276, *review denied,* 89 Wn.2d 1010 (1977)). *See also Keegan v. Grant Cy. PUD 2,* 34 Wn. App. 274, 282, 661 P.2d 146 (1983).

Here, the trial judge rejected the testimony, stating: "I don't see how this expert can testify to exclude one or another [drinking establishment in] a case like this." We hold this reason which, in effect, erroneously makes the liability joint and not several between Sunset and the Brass Bucket is not "fairly debatable", but is contrary to law. The trial court abused its discretion in not allowing Mr. Predmore to give his opinion before the jury. The precise effect of the alcohol served by the Brass Bucket upon Mr. Beutel's and Mr. Detwiler's abilities is not within the range of experience of the average juror. Thus, the evidence would have assisted the jury in evaluating the Brass

Bucket's comparative fault. It was for the jury, not the court, to determine the weight of the opinion testimony.[3]

Since we are remanding the cause for retrial, we feel compelled to address the following issues:[4]

1. Real Party in Interest.

█ Under CR 17(a), actions must be brought in the name of the real party in interest. The Brass Bucket contends the present action is for the exclusive benefit of Sunset's insurer since the settlement fully discharged Sunset. However, Washington courts have rejected the argument that an insurer who has paid its insured and been subrogated to the insured's rights against the wrongdoer is the real party in interest and the only one entitled to prosecute a subsequent action against the wrongdoer. For example, in *Consolidated Freightways, Inc. v. Moore*, 38 Wn.2d 427, 430, 229 P.2d 882 (1951), the court reasoned:

> It is a well settled rule in tort actions that a party has a cause of action notwithstanding the payment of his loss by an insurance company. The purpose of this rule is to implement

---

[3]The Brass Bucket also contends the court should have held as a matter of law that the evidence was insufficient to establish its conduct as a proximate cause of the accident. Proximate cause involves two elements: cause in fact and legal causation. *Hartley v. State*, 103 Wn.2d 768, 777–78, 698 P.2d 77 (1985). Cause in fact is generally left to the jury. *Hartley*. Here, the court properly declined to rule as a matter of law on the issue of cause in fact. It was for the jury to determine if the Brass Bucket served Mr. Beutel and Mr. Detwiler and, if it did, whether that conduct operated as a proximate cause of the accident.

The Brass Bucket's argument that its conduct did not constitute the legal cause of the accident is not persuasive. "Legal causation . . . rests on policy considerations as to how far the consequences of defendant's acts should extend." *Hartley v. State, supra* at 779. It is premised on the existence of some direct contact or special relationship between the defendant and the injured party. *Hartley*, at 784. Thus, in *Hartley*, the court held that the State's earlier failure to revoke the license of the drunk driver who killed the plaintiff's wife was not the legal cause of the plaintiff's damages. *Hartley*. But *Hartley* is distinguishable because here we have the type of conduct which the Washington court recognizes as breaching a duty owed to plaintiffs such as the Hills—the serving of alcohol to an obviously intoxicated person. *Christen v. Lee*, 113 Wn.2d 479, 780 P.2d 1307 (1989); *Purchase v. Meyer*, 108 Wn.2d 220, 225, 737 P.2d 661 (1987).

[4]We need not address the Brass Bucket's contention that the trial court erred in refusing to honor its affidavit of prejudice. The original trial judge has left the bench and thus will not be the judge on retrial.

736

the insurance company's right of subrogation, and not to afford the respondent a double recovery.

(Citations omitted.) And in *Nelson v. Northern Pac. Ry.*, 158 Wash. 52, 57, 290 P. 432 (1930), the court quoted *Alaska Pac. S.S. Co. v. Sperry Flour Co.*, 94 Wash. 227, 162 P. 26 (1917):

> "There is a fatal fallacy in the reasoning which concludes that the insured is made whole upon payment of the loss to him by the insurer, in that the premiums are not refunded to the insured so paid by him to the insurer for the policy of insurance and these premiums, if paid over some length of time, would aggregate a considerable sum of money. Nor does it seem that a wrongdoer should not respond for his wrongful act in damages to the insured and thereby profit by reason of the sagacity of the insured in keeping his property protected by insurance."

*Clow v. National Indem. Co.*, 54 Wn.2d 198, 339 P.2d 82 (1959) and *Triplett v. Dairyland Ins. Co.*, 12 Wn. App. 912, 532 P.2d 1177 (1975), cited by the Brass Bucket, are distinguishable. They involved actions on contract, as opposed to tort actions. Here, the Brass Bucket's liability for contribution sounds in tort, not contract. Sunset's right to contribution is personal to it. Its insurer's right to any proceeds is founded on its right of subrogation. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 50, at 339 n.29 (5th ed. 1984). The rationale of *Consolidated Freightways* and *Nelson* applies.

*Meyer v. Dempcy*, 48 Wn. App. 798, 740 P.2d 383, *review denied*, 109 Wn.2d 1009 (1987), also cited by the Brass Bucket, is more on point, but still distinguishable. In *Meyer*, the plaintiff sued her attorney for failing to advise her to probate her physician husband's estate so as to cut off any future medical malpractice claims. Five years after her husband died, his estate was sued by two former patients. Her husband's medical malpractice insurer settled the claims; the wife suffered no actual damages. The court upheld a summary dismissal of the action on the ground that the insurer could not be subrogated to pursue the action against the attorney. While it recognized the general

rule that plaintiffs who receive payments from their insurers covering all or part of their losses are not precluded from suing their tortfeasors, *Meyer* refused to apply the rule in cases in which the injury complained of was a damage award in an *unrelated* lawsuit which the plaintiff was never called upon to pay. *Meyer,* at 801–05. Specifically,

> Dempcy's failure to probate Dr. Meyer's estate "had nothing to do" with Dr. Meyer's medical malpractice. Maryland Casualty's loss in defending and settling the medical malpractice lawsuits was not caused by Dempcy's alleged malpractice, but by Dr. Meyer's own negligence.

*Meyer,* at 805.

In contrast, the Brass Bucket's alleged negligence in serving Mr. Beutel and Mr. Detwiler was related to the Hills' lawsuit against Sunset for injuries suffered by Lori Hill. The loss caused to Sunset's insurer in settling the Hills' action allegedly was caused, in part, by the Brass Bucket's negligence.

We hold the court correctly rejected the argument that Sunset was not the real party in interest in this action.

2. Impeachment Testimony.

Pam Pierce was bartending at the Brass Bucket the night of the accident. She testified that Doug Detwiler did not order any alcoholic beverages that night and that she refused to serve Chet Beutel because he obviously was intoxicated. Counsel for Sunset questioned her:

> Q. Later on that night, do you remember having a conversation with a young lady named Deanna Romano?
> A. No, I don't.
> Q. Do you know Deanna Romano?
> A. Yes, I work with her.
> . . . .
> Q. You don't remember her coming in the tavern that night?
> A. No, I don't.
> . . . .
> Q. Do you remember saying to her that night when talking about Chet Beutel being in the tavern, "Well, I only served him one beer."?
> A. I never said that to her.

Counsel for Sunset then called Deanna Romano. She testified:

Q. Did you have any conversation with Pam Pierce?
A. Yeah.

. . . .

Q. What did Pam tell you?
[The Brass Bucket's counsel objects on the basis of hearsay. The court had ruled before trial that the testimony would be admissible as proper impeachment.]
A. She just told me that she [Lori Hill] had gotten hit and she had only served him one beer.
Q. Served who one beer?
A. Chet, one beer.

The Brass Bucket contends Ms. Romano's testimony is inadmissible hearsay. However, if a witness' own prior inconsistent statements are not offered to prove the truth of the matter asserted, no hearsay issue arises. *Jacqueline's Wash., Inc. v. Mercantile Stores Co.*, 80 Wn.2d 784, 788, 498 P.2d 870 (1972). The court here admitted Ms. Romano's testimony as proper impeachment.[5] Further, Sunset did not need to rely on Ms. Romano's testimony as substantive evidence. As noted above, both Mr. Detwiler and Kathy Oyler, a patron who sat at the same table as Mr. Beutel, testified the two men were served beer at the Brass Bucket.

3. Negligence Per Se.

Instructions 6 and 7 dealt with negligence per se:

INSTRUCTION NO. 6

An administrative regulation of the State of Washington provides:

No retail licensee (tavern) shall give or otherwise supply liquor to any person apparently under the influence of liquor; or to any interdicted person (habitual drunkard); nor shall any licensee or employee thereof permit any person in said condition to consume liquor on his premises, or on any premises adjacent thereto and under his control, except when liquor is administered to such person by his physician or dentist for medicinal purposes.

---

[5]The Brass Bucket is not aided by the fact Sunset's counsel, in responding to the Brass Bucket's objection, did not cite impeachment as the basis for admitting Ms. Romano's testimony.

## INSTRUCTION NO. 7

The violation, if you find any, of a statute or administrative regulation is negligence as a matter of law. Such negligence has the same effect as another act of negligence.

 The Brass Bucket contends the trial court should not have instructed on negligence per se because the tort reform act of 1986 eliminates this concept. RCW 5.40.050 provides:

A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence; however, any breach of duty as provided by statute, ordinance, or administrative rule relating to electrical fire safety, the use of smoke alarms, or *driving while under the influence of intoxicating liquor* or any drug, *shall be considered negligence per se.*

(Italics ours.) The act applies to all actions filed on or after August 1, 1986. The Hills commenced their action against Sunset before that date, but Sunset did not commence its third party action against the Brass Bucket until November 24, 1986.

Sunset argues that the date of commencement of the Hills' action controls. However, it cites no persuasive authority for its position.[6] Since the third party complaint states a new cause of action against a new defendant, we deem it a new action. We therefore hold that the tort reform act of 1986 applies to the third party complaint, which was filed after August 1986.

The quoted instructions do not come within the exception to RCW 5.40.050 for violation of a statute or regulation relating to *driving* while under the influence. The regulation cited in instruction 6 concerns the *furnishing* of intoxicating liquor to one apparently under the influence. RCW 5.40.050 is clear and unambiguous; we decline to expand its

---

[6]Its citation to *Adkins v. Aluminum Co. of Am.,* 110 Wn.2d 128, 143–44, 750 P.2d 1257, 756 P.2d 142 (1988) is distinguishable. There, the plaintiff claimed on retrial that the defendant had violated certain administrative regulations. The court held that RCW 5.40.050 did not apply because the plaintiff commenced his action *before* the effective date of the act. Here, the third party complaint was not filed until *after* the effective date.

scope under the guise of interpretation. Thus, the court on retrial should instruct the jury only that violation of the administrative regulation constitutes evidence of negligence.[7]

The judgment is reversed. We do not reach the issues raised in the cross appeal as they are dependent on Sunset's position as the prevailing party in the judgment.

GREEN, A.C.J., and SHIELDS, J., concur.

Review denied at 114 Wn.2d 1025 (1990).

---

[7]We also agree with the Brass Bucket that the reference in instruction 6 to "interdicted persons (habitual drunkard)" should be deleted as unsupported by the evidence. The Brass Bucket's remaining objections to the instructions are either unpersuasive or the circumstances giving rise to them will not occur on retrial. Specifically,

1. RCW 66.08.030(2)(r) empowers the Liquor Control Board to make regulations "regulating the sale of beer and wines" by its licensees. The regulation set forth in instruction 6 comes within the Board's rulemaking authority. *Cf. Corral, Inc. v. State Liquor Control Bd.*, 17 Wn. App. 753, 566 P.2d 214 (1977) (Board did not exceed authority by adopting rule prohibiting licensee from permitting disorderly person to be on licensed premises).

2. Instruction 8, which states that it is negligence for a tavern operator to serve liquor to an obviously intoxicated person, does not repeat the negligence per se doctrine. Rather, the instruction correctly states the law in accordance with the holdings in *Christen* and *Purchase*.

3. The Brass Bucket also objects to instruction 2, which detailed Mrs. Hill's injuries and advised the jury that the court had ruled prior to this trial that Mr. Beutel and Mr. Detwiler were negligent. It contends these statements are not supported by the record in the contribution trial. We need not address this argument. Under our holding, the jury on retrial will consider evidence of the comparative fault of *all* persons responsible for the Hills' damages, including Mr. Beutel and Mr. Detwiler. Instruction 2 will not be given because the jury will determine the facts the instruction purports to state.